Martin Gariti, Plaintiff-Appellant, v. Leonard Karlin, Administrator of the Estate of Henry L. Olds, Deceased, Defendant-Appellee, and Phelps-Dodge Copper Products, Inc., a Corporation, Defendant-Appellee.

Agnes Sullivan, Administrator of the Estate of Homer D. Sullivan, Deceased, Plaintiff-Appellant, v. Phelps-Dodge Copper Products, Inc., a Corporation, Defendant-Appellee, and Leonard Karlin, Administrator of the Estate of Henry L. Olds, Deceased, Defendant-Appellee.

Gen. No. 52,985.

First District, First Division.

June 29, 1970.

Louis G. Davidson and Lawrence P. Hickey, of Chicago, (Daniel P. Kearney, of counsel), for appellants.

Schaffenegger and Watson, of Chicago (Jack L. Watson and Douglas Bristol, of counsel), for appellees.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an appeal by plaintiffs from a judgment entered on a jury verdict in favor of the defendants in a consolidated personal injury action involving a mutiple-car accident.

On January 27, 1961, at 8:30 p. m., plaintiff, Homer Sullivan, was traveling in a southerly direction on Mannheim Road, a four-lane highway near Fullerton Avenue. Plaintiff, Martin Gariti, was driving his car behind Sullivan's vehicle. Defendant, Henry L. Olds, was proceeding northbound on Mannheim Road in a vehicle rented from the Hertz Corporation by his employer, the Phelps-Dodge Copper Products Company. The Sullivan and Olds vehicles collided, and the Olds vehicle then struck the Gariti car. Henry L. Olds died of injuries four days after the occurrence. Plaintiffs, Sullivan and Gariti, filed separate suits (which were later consolidated on the motion of the defendants) against Phelps-Dodge Copper Products Company and the administrator of the estate of Olds. After the death of Homer Sullivan, during the pendency of his suit, the administrator of his estate was substituted as a plaintiff.

There was a factual dispute as to which car crossed the center line and whether Olds was or was not acting as the agent of his employer. Plaintiffs' evidence included testimony by plaintiff, Martin Gariti, that he had been following the Sullivan car for four or five blocks and at no time did his car or the Sullivan car leave the inner southbound lane. Each car was proceeding at about 40 m. p. h. At the time Gariti saw the collision in front of him, the Sullivan car was still in the inner southbound lane, although Gariti was unclear as to what exactly had happened. James Bennett, who was working at a

gasoline station on Mannheim Road between Fullerton and Grand, heard a crash and observed that there had been a collision between the Sullivan car and the car driven by Olds. At that time he saw that the Olds car was still moving in a north by northwest direction with part of the car on each side of the center line and was traveling at a speed of not less than 60 m. p. h., possibly as great as 80 m. p. h. Trooper George Huizenga testified that he was present following the accident when a fellow state police officer asked Mr. Sullivan questions and he answered them. Mrs. Sullivan testified that while hospitalized after the accident her husband was found to have diabetes. Prior to that time he had made no complaint about diabetes and had never seen a doctor for that condition. When he left the hospital, he was given some needles and insulin for the treatment of diabetes.

The sole witness for the defense on the issue of liability for the accident was Dr. George J. Cooper, an expert witness. Dr. Cooper was asked, over objections, a hypothetical question which included the general facts of the occurrence and the condition of diabetes found to exist in the hypothetical man (Sullivan). The doctor answered that he did have an opinion based upon a reasonable medical or surgical certainty whether the accident on the highway might or could have a causal connection with a condition of diabetes found in the hypothetical person. He said:

> I have an opinion. And that is based on the facts that this individual was an unknown, untreated diabetic, and these individuals vary in their ability to respond to situations. This is the higher level of consciousness, and one does not have to lose consciousness to lose judgment and all of its faculties, coordination, and recall, plus analysis at a split second. When we are dealing with a diabetic who

169

even though some who are under treatment and not properly managed, not properly controlled, they first show defects in the upper brain processes—memory, recall, analysis, judgment. And a split-second change in these reactions can produce a loss of control for a split moment—of the extremity control—and he can lose control of the vehicle or make a misjudgment.

The same holds true with visual perception, which is also one of the higher levels of the brain, the ability to visualize in depth. This is one of the finer nerve endings of the brain. It's the one that suffers first from diabetes. And in an unmanaged case—and there is no such thing as mild diabetes because any diabetic, if he doesn't get managed properly, can proceed to coma and die just like an individual who is on a heavy dose of insulin.

And in my opinion this man momentarily had a defect in his thought processes that caused the accident.

On cross-examination, Dr. Cooper testified that the factors that influenced his opinion were Sullivan's confusion after the accident, his failure to recall what had happened, Sullivan's being a diabetic sorely in need of treatment and the accident itself. It was also apparent from his answers that Dr. Cooper was familiar with the results of tests made on Sullivan, but not included in the hypothetical question. Dr. Cooper testified that he understood the accident in the question put to him as occurring when the Sullivan car partially swerved across a lane and hit the Olds car, which then hit the Gariti car. When asked if his opinion would be different if the Sullivan car had not swerved, but had remained in its lane, Dr. Cooper replied that if the hypothetical man didn't swerve and didn't lose control no matter how

minutely or for how brief a time, a different problem was posed, and his opinion would be somewhat different. While his subsequent explanation is somewhat unclear, it seems that it was his opinion that the facts about diabetes wouldn't change, but the initiating factor of the collision might be different.

Dr. Elmer Crisp testified on behalf of the plaintiffs in rebuttal, that based on the urinalysis of Sullivan done immediately after the accident it would have been impossible for his condition to have caused him to lose physical coordination and thereby lose control of his car.

■ "The opinion of an expert is to be allowed only if it is based on and supported by facts in evidence." Kanne v. Metropolitan Life Ins. Co., 310 Ill App 524, 530, 34 NE2d 732, 734. In Kanne the deceased had gone out onto Lake Tahoe in a boat and was later found dead in the water. There were no eyewitnesses. Artificial respiration induced about a quart of water out of her body. The only evidence of the defendant that the death was not caused by drowning was the testimony of a physician that death could or might have resulted from chronic myocarditis which would have relieved the insurer of liability. There was not a scintilla of evidence to show that the insured had ever suffered from any illness or infirmity of that kind. The medical evidence required by defendant before issuing the insurance policy seemed to affirmatively disprove any such condition. The doctor based his opinion upon whether the death occurred before or after the body entered the water, but there was no evidence to show whether the body went up or down or whether clothed as the insured was at the time, the body would sink or rise whether dead or alive. The doctor also drew inferences from other facts which no evidence showed to exist or not. The court held that his opinion was based upon

mere guess, surmise and conjecture and affirmed the judgment granted for the plaintiff notwithstanding the verdict for the defendant.

Similarly, in Butler v. Palm, 36 Ill App2d 351, 184 NE2d 633, the testimony of two physicians was held to be improper where they testified that there might be a causal connection between plaintiff's trauma after the automobile collision and the subsequent meningoencephalitis based upon the assumption that the brain or spinal cord was injured as a result of the collision. There was no evidence of any such brain or spinal cord damage, and the experts' opinions were thus not supported by facts in evidence.

In the case at bar, the medical witness for the defense made several assumptions on which he based his opinion. The most important and most unwarranted of these were that Sullivan was a diabetic, and that it was Sullivan whose car swerved across the center line before the collision. There was evidence that Sullivan was given insulin for a diabetic condition after the accident. There was no evidence showing that Sullivan was diabetic before the accident, or if he was, as to the extent of his condition. There was absolutely no evidence in the record on which any expert could properly express an opinion that Sullivan was suffering to such an extent from the possible consequences and effects of an unrecognized and undiagnosed diabetic condition that he could have become uncoordinated and allowed his automobile to go onto the wrong side of the highway at the time of the accident.

It was clear from the cross-examination of Dr. Cooper that he also assumed that it was Sullivan's car which swerved across the center line before the collision. There was no evidence to support this assumption, and what evidence there was tended to prove that Sullivan remained in his lane. This was the critical

172

fact in the case. If the defense had proven what the doctor assumed, his testimony would have been unnecessary. Since it was not proven, his testimony was highly speculative and improper.

Doctor Cooper testified that in his opinion, "this man had a defect in his thought processes that caused the accident." It is not the province of an expert to act as judge or jury. He cannot be called upon to decide a question of fact. He may, however, make assumptions which have a basis in the evidence, although controverted by other evidence. That is the proposition for which Gus T. Handge & Son v. Industrial Commission, 33 Ill2d 201, 210 NE2d 498, and Monark Battery Co. v. Industrial Commission, 354 Ill 494, 188 NE 413, relied on by the defendants, stand. In the instant case there was, however, no evidentiary basis at all for the assumptions made by the doctor. His testimony was highly speculative and it was not proper or competent to be considered by the jury. Mere surmise, guess or conjecture by an expert witness is never regarded as proof of a fact, and a jury will not be allowed to base a verdict thereon. Wallace v. Yudelson, 244 Ill App 320, 329. The cause must therefore be remanded for another trial.

Since there must be another trial, we do not deem it necessary to consider other issues raised by the plaintiffs. For the reasons stated, the judgment of the Circuit Court is reversed, and the cause is remanded for another trial.

Reversed and remanded.

MURPHY and ADESKO, JJ., concur.