THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEROY SCOTT OSBORNE, Defendant-Appellant.
Fourth District    No. 4—88—0604

Opinion filed May 4, 1989.—Rehearing denied June 15, 1989.

Gary F. Geisler, of Geisler, Waks & Geisler, of Decatur, for appellant.

Richard E. Goff, State's Attorney, of Clinton (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

On January 13, 1988, the defendant Leroy Scott Osborne was indicted by a grand jury in De Witt County for the offense of first degree murder in the death of Joshua Wayne Reynolds. Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(2).

At trial the following evidence was adduced. The defendant testified that on August 7, 1987, he was employed and resided in Clinton, Illinois. He was divorced and had full custody of one child and joint custody of his other child. After getting off work on August 7, the defendant picked up his girlfriend and her two children, Joshua, nine months old, and Amber, four years old, and took them to his house in Clinton. He then left the home to perform some errands while his girlfriend Melissa stayed with his children and hers. Upon his return, he checked on the children and saw they were sleeping, but a short time later the defendant heard Joshua crying. Defendant testified he picked the child up, held him for a few minutes, laid him back down in the bed but the boy began crawling toward the edge of the bed.

The defendant, realizing Joshua would not remain in bed, took a piece of cloth and wrapped it around the child's right arm, across his back, and then around his left arm, in order to keep the child where he was placed. The defendant testified he then realized Joshua was not going to stop crying. He took an ace bandage and wrapped it around the child's head twice, covering the mouth. The bandage was not covering the child's nose. The defendant testified the bandage

muffled the child's crying but did not impair the child's breathing to any notable degree.

The defendant stated he then left the bedroom and talked on the phone for several minutes. At the conclusion of the phone call, the defendant joined his girlfriend in his bedroom and informed her that he had wrapped Joshua's mouth because of the loud crying. He then performed carnal intercourse with her. Shortly afterwords, the defendant thought he heard a noise from the children's bedroom. Thinking it was the cat, he went into the bedroom and noticed Joshua was lying on his stomach with his face to the mattress. He went to unwrap Joshua's mouth and found the child was very limp. He then realized Joshua was not breathing and attempted cardiopulmonary resuscitation. The defendant alerted his girlfriend and together they took Joshua to the John Warner Hospital. Upon arrival at the hospital, the coroner was notified and took possession of the body.

The defendant also testified the practice of "wrapping" the children had come from Melissa. He stated he believed the ace bandage was porous enough to be able to breathe through. Melissa Reynolds denied the idea of "wrapping" the children came from her. However, Officer Lonbom, of the Clinton police, testified Melissa had told him she had a practice of using ace bandages to wrap the children at her home and she would sometimes "wrap" Joshua's mouth if he kept crying.

The State presented the testimony of Dr. Jordan L. Mann, who performed the autopsy on Joshua at Memorial Medical Center in Springfield. Mann is a pathologist at the Medical Center and teaches at the Southern Illinois University School of Medicine. Mann testified that based upon his findings in the autopsy alone, the cause of death was undetermined. Dr. Mann stated that he had received information that Joshua had received a diptheria, pertussis, and tetanus (DPT) vaccination three days prior to the death, studies had shown some children experienced severe reactions to the vaccination and a possible relationship between the vaccination and sudden infant death syndrome (SIDS) had been reported. He also testified one of the findings during the autopsy was a mild astricidic proliferation and a single focal cavatory lesion in the brain stem. He noted this was also frequently present in cases of SIDS.

The State next presented the testimony of Dr. Millard Bass, an osteopath physician and forensic pathologist from New York. Dr. Bass testified he made his determination of the cause of death based on the assumption the bandage covered the child's mouth and nose. This assumption was made on the basis of the size of the bandage and the

child's face. Based on the autopsy findings alone, not considering any extrinsic information, he would agree with Dr. Mann's conclusion that the cause of death was undetermined. He stated the child might very well have been able to breathe through the ace bandage wrapped over his mouth. On further cross-examination, the doctor testified as to the authority of several studies concerning SIDS and linking SIDS with DPT vaccinations.

The State also called Dr. Enid Gilbert, a pathologist from the University of Wisconsin and the teacher of Dr. Mann. Gilbert testified the child died of suffocation. She acknowledged that from the autopsy findings it was impossible to tell whether the child stopped breathing from having the ace bandage over his mouth or if the child stopped breathing from lying face down. She also concurred with the other two doctors that from the autopsy report alone, suffocation and SIDS would be indistinguishable. She testified she was aware the child had received a DPT vaccination within two or three days of his death and she was aware of the studies linking the vaccination with SIDS. She also testified about recent studies refuting the connection between the vaccination and SIDS.

On June 29, 1988, the defendant was found guilty of involuntary manslaughter. On August 10, 1988, a sentencing hearing was held. The court, after reviewing the evidence and mitigating factors and stating it was considering a sentence which would not deprecate the seriousness of the crime, sentenced the defendant to four years in the Department of Corrections. The defendant filed a notice of appeal on August 15, 1988.

The defendant argues the State has failed to establish his guilt beyond a reasonable doubt where the expert testimony of the pathologists was the cause of death was undetermined. He contends the failure of the pathologists to exclude SIDS caused by apnea or a DPT vaccination prevented the State from proving the defendant caused the victim's death.

■ Although it is not necessary to prove the defendant's act was the sole and immediate cause of death, the State must nevertheless prove that defendant's act was beyond a reasonable doubt a contributory cause and that death did not result from a cause unconnected with the defendant. (*People v. Kent* (1982), 111 Ill. App. 3d 733, 444 N.E.2d 570.) Defendant correctly suggests that Dr. Mann, the pathologist, could not definitely state the cause of the victim's death based on the findings of the autopsy alone. However, Drs. Bass and Gilbert were also called as expert witnesses by the State. Dr. Bass testified that based purely on the findings of the autopsy he could not deter-

mine the cause of death definitely, but that considered in conjunction with the other information, his opinion was that the child had died of suffocation. While he admitted other causes of death were possible and there was extensive testimony on various scientific works concerning SIDS, his ultimate conclusion was that the child had died of suffocation.

Dr. Gilbert also testified on the scientific literature and specifically on recent studies relating to DPT vaccinations and SIDS. She heavily discounted the possibility of SIDS as a cause of death in this case, whether as a result of the vaccination or from other causes. She testified suffocation was the cause of death and specifically stated the child's nose did not need to be covered for this to be the cause of death. The court specifically stated that Dr. Gilbert's was the most helpful and persuasive testimony when it made its findings.

■ Though defendant relies on *Kent*, that case is inapposite to the one here. In *Kent*, the appellate court reversed because the finding of the pathologist was based on an inadequate autopsy which could not reliably reveal the cause of death. The court found the evidence to be insufficient to support the conviction. In this case, there is no question concerning the adequacy of the autopsy. A case closer to the facts here is *People v. Wieland* (1984), 123 Ill. App. 3d 576, 462 N.E.2d 1256. There, in a murder prosecution, the pathologist testified that death could have been caused by a beating or by natural causes. The defendant there stated he had punched the elderly victim several times in the head. This court held there was sufficient evidence to support a conclusion the defendant's beating caused or contributed to the victim's death and upheld the conviction. In the instant case, two experts testified suffocation was the cause of death. The remaining expert testified it was undetermined. The court found the autopsy report listed the cause of death as undetermined but suggested suffocation was the cause. This, when taken in conjunction with the defendant's testimony concerning the binding of the victim and the "wrapping" of his mouth, is sufficient to support his conviction. A jury may consider the medical evidence in context and is not required to search out a cause of death compatible with innocence. (*People v. Peterson* (1988), 171 Ill. App. 3d 730, 525 N.E.2d 946.) In this case, the trier of fact is the court, and it is likewise not required to look for a cause of death compatible with the defendant's innocence.

Defendant next maintains both Drs. Bass and Gilbert gave their testimony based on the assumption the bandage covered both the child's mouth and nose. Defendant further argues the evidence directly contradicted such an assumption and the expert testimony

should therefore not have been admitted.

First, it is necessary to note the only evidence concerning the placement of the bandage was the statements of the defendant himself. He testified that when he "wrapped" the face of the child, he covered only the mouth. He also testified he returned to find the child was not breathing, face down on the mattress, and the bandages still covered only the mouth. The bandages were then removed by the defendant and no other person had the opportunity to observe them in place. Thus, any statements on the position of the bandages in the autopsy or police reports, or in evidence given at trial, are directly attributable to the defendant alone. Furthermore, throughout the trial the defendant continually sought to show it was possible to breathe through the bandage. If this evidence was taken in the light most favorable to defendant, it would render the question of whether the bandage covered the nose and mouth or the mouth alone moot since under defendant's theory the child would have been able to breathe in either case.

While it is clear that both Drs. Bass and Gilbert considered the possibility the bandage would have covered both the child's mouth and nose, both doctors were willing to state the child died of suffocation. Dr. Bass indicated his consideration of information outside the autopsy report had gone beyond the matter of whether both the mouth and nose of the child were covered. Dr. Gilbert stated the question of whether one or both were covered would not markedly affect her determination.

■■ ■ Defendant has cited a number of civil cases to stand for the proposition that an expert witness may not guess or state an opinion based on mere conjecture. Even accepting defendant's argument that both experts gave opinions based on the assumption the bandage covered both the child's mouth and nose, such an opinion would not be based on guess or conjecture. The bandage used to wrap the child's face was an exhibit at trial. There was testimony concerning the distance between the child's mouth and nose and the likelihood that the bandage placed over the mouth alone could interfere with the breathing of the child. There was also the testimony the defendant had found the child face down on the mattress with its arms still bound and the child had been crying and screaming at the time when he had been "wrapped." An expert may make assumptions which have a basis in the evidence even though it is contradicted by other evidence. (*Gariti v. Karlin* (1970), 127 Ill. App. 2d 166, 262 N.E.2d 179.) Here, the experts could have made an assumption based on the evidence of the placement of the bandage and the size of the child and the ban-

dage. This would be a reasonable assumption based on the evidence and contradicted only by the defendant's statement. Before an expert is allowed to state his opinion, the facts upon which that opinion are based must be in evidence. Admissibility of expert testimony is conditional upon laying such a foundation. (*People v. Driver* (1978), 62 Ill. App. 3d 847, 379 N.E.2d 840.) Here, the testimony was based only on facts in evidence and did not, therefore, represent impermissible speculation.

■■ Defendant also argues the denial of probation and a sentence of four years in the Department of Corrections was an abuse of discretion and a misunderstanding of the purpose of intensive probation. To take the defendant's arguments in reverse order, defendant has not shown where or how the court misunderstood the purposes of intensive probation. A careful reading of the record reveals only that defendant brought the availability of such probation in an adjoining county to the attention of the trial court. It does not reveal any error or misunderstanding on the part of the trial court. Defendant has failed to show any error or cite any authority which would require us to reverse the trial court.

■■■ Defendant argues the trial court erred in sentencing him to four years in the Department of Corrections. He has recited a number of cases to stand for the general proposition that a court's discretion is not unlimited in sentencing. He has failed to cite any authority to show how the court abused its discretion here. There is a strong presumption that a trial court's sentencing decision is based upon proper legal reasoning, and it is entitled to great deference and weight. (*People v. Johnson* (1988), 172 Ill. App. 3d 371, 526 N.E.2d 611.) Imposition of a sentence is the purview of the trial court and will not be disturbed absent an abuse of discretion. A belief that probation would deprecate the seriousness of the offense is a justifiable reason for denying probation. (*People v. Monk* (1988), 174 Ill. App. 3d 528, 528 N.E.2d 1063.) The court here clearly indicated it considered the mitigating factors provided for in the statute but it also stated it would impose a sentence which would not deprecate the seriousness of the crime. It chose to impose a period of imprisonment on the defendant.

In his reply brief, defendant has also argued his situation is analogous to a disparate sentence being given to an accomplice or codefendant. In this case, defendant's girlfriend, mother of the victim, is alleged to have "wrapped" the child on previous occasions. Defendant suggests his girlfriend, though not indicted for any crime, is in the position of an accomplice and because she is going unpunished defendant's sentence is disparate.

■ Defendant's argument here is not well taken. He has failed to show this court how it would leap from the cited authority, which involved comparison of sentences between convicted accomplices, to the instant case, where the defendant stands convicted of involuntary manslaughter and his girlfriend has not been indicted for any crime. The authority cited by defendant and the situation in this case are completely inapposite and no analogy can be drawn between them. For this reason, the defendant's argument fails and his sentence is affirmed.

The judgment of the circuit court is affirmed.

Affirmed.

LUND and GREEN, JJ., concur.