THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER D. JOHNSON, Defendant-Appellant.

First District (1st Division)   No. 85—3028

Opinion filed June 30, 1988.

James J. Doherty, Public Defender, of Chicago (Margaret Drewko, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Bonnie Meyer Sloan, and Frank J. Savaiano, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Defendant Walter Johnson was convicted of voluntary manslaughter after a jury trial and sentenced to 12 years' imprisonment. On appeal, he argues that his conviction should be reversed because (1) his

use of force was reasonable under the circumstances; (2) the trial court erred by barring evidence of the decedent's reputation for violent behavior; and (3) the trial court abused its discretion by imposing a 12-year sentence on the defendant. We affirm.

The facts giving rise to the appeal are as follows. On February 1, 1985, the defendant was approached by Calvin Dates (Calvin), a co-worker at the Zimmerman Brush Company, who tried to sell him a gun. Although defendant did not want the gun, he was afraid to say so to Calvin. He told Calvin he would think about it and later called him to tell him that he did not want to buy the gun. Calvin told defendant that he nonetheless owed him $20 for his trouble. Calvin phoned the defendant several times during the day demanding money, and at lunch time, cornered him in the washroom, instructing him to be at the currency exchange at 4 p.m. Walter told several co-workers, Timothy Kindle, Milton O'Neal and Freyja Mason, about this incident.

At about 3 p.m., the defendant called his friend, Linda Hadwick, told her what had happened and asked her to bring him a gun. Hadwick brought the gun at approximately 3:45 p.m., at which time Walter placed the gun in his waistband and returned to work. When he reached the 6th floor, he examined the gun and saw that it was loaded. He told two co-workers, Freyja Mason and Milton O'Neal, about the gun.

At approximately 4 p.m., defendant left work and found Calvin waiting for him outside of the factory. The two men walked down Lake Street toward Halsted, Calvin with his hands in his pockets. Although Calvin never said so, the defendant assumed they were going to the currency exchange so that Walter could cash his paycheck.

There are several versions of what next occurred. Calvin was shot and killed and defendant was questioned immediately thereafter. Immediately after the shooting, the defendant had told Detectives Wendt and Puleaf of the Chicago police department and Assistant State's Attorney Dawn Overend that when he and Calvin had reached the corner of Lake and Peoria, Calvin stopped to wave at someone. The defendant seized the opportunity and struck Calvin in the head with his fist. At that time, Calvin stumbled to the ground and a gun fell out of his pocket. Walter said he ran over, picked up the gun and pulled the trigger twice, but that the gun failed to fire either time. As Calvin started to get up, Walter pulled the trigger a third time and the gun fired, striking Calvin in the side. Walter told the detective that as Calvin fell, the gun was knocked to the ground and broke apart. Walter picked up the pieces of Calvin's gun and ran away. Walter signed a written statement to that effect.

At trial, however, Walter testified that approximately one-half block from the factory, Calvin came at him with both hands in his pockets saying, "You think I'm playing with you." When Calvin made a movement with his hand, Walter pulled his gun from his waistband and shot Calvin once. As Calvin fell, his gun fell out of his pocket. Walter picked up that gun and ran. At approximately 4:30 p.m., Walter saw a friend of his, Booker Green, driving down Randolph at Racine. Walter flagged Booker down and asked for a ride home. In the car, Walter told Booker what had happened and Booker told Walter to turn himself in to the police. When Walter looked at Calvin's gun and saw that there were no bullets in it, he decided to tell the police there was only one gun. Walter testified that he had lied to the police because he wanted to cover up the gun which he had received from Linda.

Freyja Mason was called by the defense and testified that she and Walter were co-workers. At about 2 p.m. on the day of the shooting, Walter told her that Calvin had brought a gun to work for him to look at, but that he did not want the gun. Walter stated that Calvin wanted $20 for his trouble and had threatened to kill him if he did not pay the $20. At about 3 p.m. that day, Walter told her that he had to get a gun or that Calvin would kill him.

Timothy Kindle testified that he worked at the Zimmerman Brush Company with the defendant and that they were good friends. On February 1, 1985, at approximately 10 a.m., Walter told him that Calvin had brought a gun to work for him. Walter had stated that he did not want the gun, but that Calvin wanted $20 for his trouble. Kindle said that at about 3 p.m. that day, Walter asked him if he would have his car outside at 4 p.m. so that if Calvin was not waiting for him, he could run to Kindle's car and get a ride home. Kindle stated he was out in front of the factory at 4 p.m. when he saw Walter come out and saw Calvin waiting for him. The two men walked down Lake Street until they reached Peoria Street. At that time Walter began to walk away from Calvin, the two men exchanged words and Calvin made a movement into his pocket. Kindle said Walter pulled a gun from his waistband and shot Calvin. When Calvin fell to the ground, Walter picked up the gun that was in Calvin's hand and ran away. Kindle stated that he was approximately 300 feet from the scene at the time of the shooting.

Milton O'Neal testified that he and Walter were co-workers and friends. At about 3 p.m. on February 1, 1985, he had a conversation with Walter at which time Walter had stated that he had to get a gun to protect himself from Calvin. At 4 p.m. that day, O'Neal saw Walter

walk down Lake Street with Calvin. When they reached Peoria Street, Walter began to move away from Calvin, and Calvin ran up in front of the defendant and blocked his path. O'Neal stated that the two men talked for a while and then Calvin pulled a gun out of his pocket. Walter pulled a gun out of his waistband, shot Calvin, picked up Calvin's gun and ran away. O'Neal testified he was approximately 200 feet from the scene of the shooting.

■ Initially, the State argues that the defendant has waived all issues on appeal by failing to file a written post-trial motion. The general rule is that the failure to raise an issue in the written motion for a new trial constitutes a waiver of that issue and cannot be urged as a grounds for reversal or review. (*People v. Caballero* (1984), 102 Ill. 2d 23, 31, 46 N.E.2d 223.) However, the record indicates that an oral post-trial motion was made and denied. Where a general oral post-trial motion is made, and the State fails to object, it has waived any objection it may have and any grounds that may appear in the record can be raised as grounds for appeal. *People v. Yates* (1983), 98 Ill. 2d 502, 512, 456 N.E.2d 1369.

Defendant's first argument on appeal is that the evidence was insufficient to sustain a conviction for voluntary manslaughter over a claim of self-defense. He argues that the evidence shows that he was justified in his use of deadly force in light of the threats the victim had made throughout the day and the fact that the victim had a gun at the time of the shooting.

■ The use of deadly force in defense of the person is only justified where (1) force is threatened against the person, (2) the person threatened is not the aggressor, (3) the danger of harm is imminent, (4) the force threatened is unlawful, and (5) the person threatened actually believes that a danger exists, that the use of force is necessary to avert the danger, that the kind and amount of force used are necessary and that such beliefs are reasonable. (*People v. Balfour* (1986), 148 Ill. App. 3d 215, 221, 498 N.E.2d 547.) When an individual intentionally or knowingly kills another individual under a reasonable belief that the circumstances justify or exonerate the killing, he has acted in self-defense; when his belief is unreasonable, he has committed voluntary manslaughter. (Ill. Rev. Stat. 1985, ch. 38, pars. 7—1, 9—2.) Thus, voluntary manslaughter and self-defense are similar in that both involve the defendant's subjective belief that the force was justified at the time of the occurrence. They differ only as to the reasonableness of that belief. (*People v. Eshaya* (1986), 144 Ill. App. 3d 757, 763, 494 N.E.2d 772.) Voluntary manslaughter may be viewed as a legal compromise between murder and exoneration (*People v. Johnson*

(1972), 4 Ill. App. 3d 249, 251, 280 N.E.2d 764), or as an imperfect claim of self-defense (*People v. Monigan* (1981), 97 Ill. App. 3d 885, 889, 423 N.E.2d 546). The issue of self-defense presents a question of fact to be determined by the trier of fact. (*People v. Balfour* (1986), 148 Ill. App. 3d 215, 222, 498 N.E.2d 547.) Once it has been raised, the burden of proof is on the State to disprove beyond a reasonable doubt the justification of the use of deadly force. *People v. Ortiz* (1978), 65 Ill. App. 3d 525, 530, 382 N.E.2d 303.

■■■ In the case before us, the jury heard the State's witnesses testify that immediately after the shooting the defendant had told them that he had struck Calvin in the head and then shot him with his own gun as he was getting up. They also heard the defense witnesses testify that Calvin had made a movement in his pocket at which time the defendant shot him. In determining which of these accounts to believe, the trier of fact does not have to accept as true the testimony presented by the defendant concerning self-defense, but, rather, in weighing such evidence must consider the probability or improbability of the testimony, the circumstances surrounding the killing and other witnesses' testimony. (*People v. Perry* (1980), 91 Ill. App. 3d 988, 993, 415 N.E.2d 523.) The decision of the trier of fact on the issue of self-defense will not be disturbed on review unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of guilt. (*People v. Zolidis* (1983), 115 Ill. App. 3d 669, 674, 450 N.E.2d 1290.) It is clear that the jury, after hearing the evidence, was persuaded that the defendant was acting under a belief that his use of force was justified. It is also clear that the jurors felt that either this belief was unreasonable or that the use of deadly force was unnecessary. Based on the record we cannot say that the evidence is so improbable or unsatisfactory that it will not support this determination. Consequently, we will not disturb the jury's finding on review.

Second, defendant contends that the trial court erred by barring evidence of the deceased's reputation for violent behavior. Defendant made an offer of proof in which he said that Freyja Mason would testify that the deceased was known as a "bully." He maintains that this evidence was relevant to establish the reasonableness of his fear and should have been presented to the jury.

■■ Evidence of a victim's aggressive and violent character may be offered to support a theory of self-defense in two ways: (1) where the defendant's knowledge of the victim's violent tendencies may have affected defendant's perception of and reaction to the victim's behavior; and (2) where evidence of the victim's propensity for violence tends to support defendant's testimony that the victim was the ag-

gressor. (*People v. Lynch* (1984), 104 Ill. 2d 194, 200, 470 N.E.2d 1018; *People v. Hanson* (1985), 138 Ill. App. 3d 530, 537, 485 N.E.2d 1144.) In the first instance, the defendant must have known of the victim's violent nature when the act of self-defense occurred since the testimony is offered to supply insight into the defendant's state of mind and his beliefs regarding the danger he was in. (*People v. Buchanan* (1980), 91 Ill. App. 3d 13, 16, 414 N.E.2d 262.) In the second situation, whether the defendant knew of the evidence at the time of the incident is irrelevant. When the theory of self-defense is raised, the victim's aggressive and violent character is relevant to show who was the aggressor, and the defendant may introduce appropriate evidence of that character, regardless of when he learned of it. *People v. Charleston* (1985), 132 Ill. App. 3d 769, 773, 477 N.E.2d 762.

■ Defendant's offer of proof was not intended to show that the victim was the aggressor but rather to show the reasonableness of his acts in light of the victim's reputation for violence. However, since there is no evidence in the record to indicate that the defendant was aware of this reputation, this evidence is irrelevant and was properly excluded.

Finally, the defendant contends that the trial court abused its discretion by imposing a sentence of 12 years' imprisonment. He maintains that the judge ignored factors in mitigation and relied on his personal feelings about the evidence as a basis for sentencing.

■ ■ There is a strong presumption that a trial court's sentencing decision is based upon proper legal reasoning and it is entitled to great deference and weight. (*People v. Partin* (1987), 156 Ill. App. 3d 365, 373, 509 N.E.2d 662.) Absent an abuse of discretion, the sentence of the trial court may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) We find the defendant's contention to be without merit. The record indicates that the court considered all of the factors in aggravation and mitigation before it imposed the sentence, which is within the statutory limits of 4 to 15 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(4).) We hold that the trial court did not abuse its discretion in imposing the term of imprisonment and find no reason to reduce the sentence.

Accordingly, the judgment of the trial court is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.

Judgment affirmed.

QUINLAN and O'CONNOR, JJ., concur.