THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FELICIA MILLER, Defendant-Appellant.

First District (1st Division)   No. 1—87—2425

Opinion filed March 18, 1991.

George C. Howard, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Matthew L. Mahoney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Defendant, Felicia Miller (hereinafter Felicia), appeals from a conviction for attempted murder. The following facts were adduced at trial. Arthur Carroll (hereinafter Arthur) testified that on the evening of May 3, 1986, he and Felicia had a chance meeting in a bar on the southside of Chicago. While they had not seen each other for approximately two years and were not currently dating one another, they proceeded to spend the next few nights together at several hotels. After three nights together, Arthur made an effort to leave the hotel room. Felicia resisted this effort and eventually Arthur abandoned his effort to leave. Each day both Felicia and Arthur went to their respective jobs and met again each evening at a hotel after work. On Thursday morning, May 8, both Felicia and Arthur left the hotel and entered a taxi, the destination of which was 233 North Michigan Avenue, where Arthur worked at Blue Cross/Blue Shield as a clerical employee. Felicia exited the cab after Arthur got out and followed him into his place of employment. He went up the escalator, and she followed behind. As Arthur proceeded up the escalator, he heard his name called out. When he turned around, he saw Felicia standing three to four feet away with a gun pointed in his direction. Felicia shot at Arthur. He was struck in the lower abdomen by that shot, and the second shot, which occurred during a struggle, grazed Arthur's forehead. Arthur managed to wrestle the gun away from Felicia and gave it to a security officer who had arrived at the scene. He then collapsed and was taken by ambulance to Northwestern Hospital, where he was hospitalized for two weeks and readmitted for three or four days.

Arthur denied on cross-examination that he caused injury to Felicia but acknowledged that on May 6, while arguing with her, he did

slap her. He stated that Felicia said the reason she shot him was because he had "messed over" her. He admitted on redirect that he and Felicia had been abusing cocaine for five days, that Felicia had supplied the cocaine paraphernalia and that he had supplied the money to purchase the cocaine.

The State presented an independent witness, Deborah Lallie, who observed the entire occurrence. She testified substantially in accordance with the facts relating to the shooting incident as heretofore set forth. She further testified that the shooting was preceded by no conversation, and there was no struggle or argument between Felicia and Arthur before the shooting took place.

Security officer Loring Sims stated that upon arriving on the scene immediately after the shots were fired he detained Felicia. He observed nothing unusual about Felicia's physical appearance and saw no scratches, marks, bruises, swelling or blood on her face. She very calmly smoked a cigarette while awaiting the arrival of the police.

Officers Musial and Rimkus of the Chicago police department responded to a radio call of shots at 233 North Michigan Avenue. They both testified in accordance with the security officer's testimony regarding Felicia's physical appearance.

The defense presented the testimony of Howard Hradek, a paramedic at Cook County jail, who, after looking at his report, testified that he observed a bruise on Felicia's left eye, a cut on her right shin, and a cut on her right forearm. He was unable to state the age of the bruise, and he observed no cuts on Felicia's face, lips, nose, eyes or forehead.

Felicia testified substantially in the same manner as Arthur regarding the chance encounter and the five-day binge. She further stated that she became angry with Arthur regarding the money which she had spent and which Arthur had promised to repay. She stated that during the argument about the money he struck her "at least five times." She also suspected Arthur of taking her jewelry, although she acknowledged that she did not see him take it. She complained that Arthur treated her like dirt, and she "had never been treated like that before." She did not, however, report this alleged brutality to anyone, nor did she go home and remain or seek medical treatment. Felicia acknowledged that she went home on May 7 and retrieved her gun and then went back to meet Arthur at the hotel. She did this prior to being struck and prior to realizing that her jewelry was missing. She also conceded that she knew the gun was loaded. Finally, she contends that on the morning of May 8, she discovered money missing from her purse, but the gun was still there.

Felicia's testimony, however, differs from Arthur's and Ms. Lallie's regarding the events on the escalator. She claims that, as she was riding up the escalator behind Arthur, he turned around and struck her with his fist. She pulled the loaded gun from her purse out of fear; Arthur grabbed it and it "went off." She contends there were two struggles and that as a result of each struggle the gun "went off." Felicia also denied using cocaine.

Several rebuttal and surrebuttal witnesses testified, giving differing accounts regarding Felicia's physical appearance after the shooting incident. Specifically, the State's rebuttal witnesses attested to the accuracy of the photograph taken of Felicia at the jail which portrayed Felicia as not having a bruise over her left eye or marks on her arm. Felicia's surrebuttal witnesses testified to her appearance in the photos as being inaccurately depicted, and also that seeing her in person on the next day in court they observed that she did in fact have a bruised left eye and marks on her arm.

The jury returned guilty verdicts of attempted murder, armed violence and aggravated battery. The armed violence and aggravated battery were merged into the attempted murder, and Felicia was sentenced to eight years in the Illinois Department of Corrections.

Felicia presents the following issues on appeal: (1) whether the jury's verdicts of guilty were manifestly against the weight of the evidence where the testimony of the complainant was rendered unbelievable and the only other witness who testified to the occurrence was Felicia; (2) whether the State sustained its burden regarding the specific intent to kill required to prove attempted murder; (3) whether or not once the evidence has shown that the shooting occurred during mutual combat a verdict of attempted murder can stand; (4) whether the evidence at trial reflected a case of self-defense; and (5) whether the court erred when it rejected the defense's effort to elicit testimony from Arthur regarding his violent background.

Felicia initially maintains that she was not proven guilty beyond a reasonable doubt, where the testimony of Arthur was rendered unbelievable and the only other person who testified as to what happened was Felicia. The State counters that Felicia's testimony was likewise unbelievable, but that a neutral witness testified to the events leading up to the shooting. The State further argues that the jury, as the trier of fact, has the responsibility of determining the credibility of the witnesses and did in fact resolve the credibility issue against Felicia.

In support of her argument, Felicia alludes to the "inconsistencies and out right falsehoods" testified to by Arthur. Specifically, Felicia points to the fact that Arthur told conflicting stories

about his place of residence, the amount of cash he had on his person during the five days they spent together and whether or not he had written Felicia a bad check. It is the function of the trier of fact to determine witnesses' credibility. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Moreover, the inconsistencies pointed out by Felicia do not have any bearing on the justification or lack thereof by Felicia to attempt to kill Arthur. According to the evidence presented at trial, at the time of the shooting incident, Arthur had tried to leave the presence of Felicia and was making his way up an escalator to his job. There was no argument, Arthur had not struck or threatened Felicia at that time, and he was not having any verbal or physical encounter with her then. Assuming, *arguendo*, that he had beaten her, stolen from her and rejected her the night before, such occurrences would not provide legal justification for the shooting which occurred on the escalator a day later. While the record does bear out Felicia's contention that there were discrepancies in Arthur's testimony, it also reflects many discrepancies and inconsistencies in Felicia's testimony. Specifically, she complained at trial that she was the victim of a savage beating by Arthur the night before. She claimed that she was struck in the back of her head, the right side of the head, the left side of the head, the top of the head, kicked in the right side of her face, kicked and struck in the jaw and in the right cheek, and kicked and hit on the right side of her head. Yet the photograph of Felicia taken after her arrest the next morning failed to show any bruises or swelling, just a smiling Felicia.

She further testified that she went home and obtained the gun because of her fear of Arthur, a day before he allegedly struck her. Yet she returned to him at the hotel instead of remaining in the safe environment of her home. She further claimed that money and jewelry were missing, the money from her purse, and the jewelry which she had laid out while showering. Yet a gun was in her purse, and the alleged thief never took the gun.

██ █ The jury heard all of Felicia's claims and saw the photograph of her, which was received in evidence. They heard her testimony that she shot Arthur in response to being struck by him while they rode up on the escalator. They also heard her testify to the anger she felt on the morning of May 8 after she realized that she had been conned by Arthur. But the jury also had the opportunity to hear from a neutral witness who just happened to be on the escalator at the time of the shooting who disputed Felicia's version of what happened and corroborated Arthur's version. The jury has the responsibility for determining the credibility of witnesses, and it is clear that

it chose to believe the State's witnesses and to disbelieve Felicia. Our supreme court has consistently ruled that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime charged beyond a reasonable doubt." (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) It is simply not the function of a court of review to retry a defendant. We are convinced that the evidence was sufficient to find Felicia guilty of attempted murder.

Felicia next maintains that her conviction must be reversed in light of the State's failure to prove beyond a reasonable doubt that she was not acting in self-defense at the time she shot Arthur. Where a person reasonably believes that deadly force is necessary to prevent imminent death or great bodily harm to himself, that person is justified in using deadly force. (Ill. Rev. Stat. 1985, ch. 38, par. 7—1.) Moreover, after the affirmative defense of self-defense has been raised, the State is required to prove beyond a reasonable doubt that Felicia was not acting in self-defense. (Ill. Rev. Stat. 1985, ch. 38, par. 3—2(b).) The affirmative defense of self-defense can be raised by either side presenting some evidence of each element of the defense. *People v. Kyles* (1980), 91 Ill. App. 3d 1019, 415 N.E.2d 499; see Ill. Rev. Stat. 1985, ch. 38, par. 3—2(a).

The elements of self defense are (1) that force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm is imminent; (4) the person threatened must actually believe (a) that a danger exists, (b) the use of force is necessary to avert the danger, and (c) the kind and amount of force which he uses is necessary; and (5) all of the above beliefs are reasonable. Moreover, the use of deadly force is limited to those situations wherein the threatened force will cause death or great bodily harm or the force threatened is a forcible felony. *People v. Williams* (1965), 56 Ill. App. 2d 159, 165-66, 205 N.E.2d 749, 752; *People v. Ross* (1981), 100 Ill. App. 3d 1033, 427 N.E.2d 955.

It is the function of the trier of fact to resolve the issue of self-defense, and the trier of fact is not required to accept as true the evidence in favor of self-defense. (*People v. Johnson* (1988), 172 Ill. App. 3d 371, 377, 526 N.E.2d 611.) Rather, the trier of fact is compelled to consider the probability or improbability of the evidence, the circumstances surrounding the event, and the witnesses' testimony. (*Johnson*, 172 Ill. App. 3d at 377.) A court of review will not disturb the trier of fact's decision regarding self-defense unless the evidence

is so improbable or unsatisfactory as to raise a reasonable doubt of guilt. (*Johnson*, 172 Ill. App. 3d at 377.) The standard of review, as recently articulated by our supreme court, is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) (*People v. West* (1990), 137 Ill. 2d 558, 584, 560 N.E.2d 594.) When a jury reaches a determination that any of the evidence adduced at trial negates the existence of any one of the elements heretofore set forth beyond a reasonable doubt, the State has met its burden. *People v. Seiber* (1979), 76 Ill. App. 3d 9, 394 N.E.2d 1044.

■ In the instant case, the resolution of Felicia's guilt depended upon the jury's assessment of the credibility of the witnesses and the weight to be accorded their testimony. The jury had the opportunity to observe the witnesses and to listen to their testimony. The determination regarding the credibility of the witnesses is exclusively within the jury's province. (*Collins*, 106 Ill. 2d at 261.) The State's witness testified that as Arthur was riding up on the escalator, Felicia, who stood a step below Arthur, called out his name, and as Arthur turned around, Felicia aimed the gun at him and pulled the trigger. Felicia claimed that as she was riding up the escalator behind Arthur, he turned around and struck her with his fist. She further contended that she pulled the loaded gun from her purse out of fear and that a struggle ensued when Arthur grabbed the gun, causing it to go off. It is reasonable to conclude that the jury decided that Felicia's testimony was unbelievable, especially considering that an independent witness for the State, Ms. Lallie, testified that her unobstructed view allowed her to observe that no struggle, argument or conversation preceded the first shot.

While we are cognizant that the test to be utilized in making a determination of whether a defendant is justified in using deadly force in defense of him or herself is what a reasonable person under these circumstances would have subjectively believed (*People v. White* (1980), 87 Ill. App. 3d 321, 409 N.E.2d 73), we are also mindful that the evidence in this case does not provide support for the conclusion that Felicia subjectively believed that her life was in jeopardy. She claims that she was physically assaulted prior to the morning in question, yet each night she never sought to leave the hotel where she spent several nights with Arthur nor did she refuse to continue meeting him each evening; she never complained to anyone of the alleged mistreatment; her physical appearance was inconsistent with one who had been brutalized in the manner she described; she sought to pre-

vent Arthur from leaving her in the hotel room on the last night they spent together; she followed him to his place of employment on the day of the shooting; and when she shot him, he was unarmed. The jury was not compelled to accept Felicia's version of the event. (See *Seiber*, 76 Ill. App. 3d 9.) Moreover, the reasonableness of an individual's belief of the necessity to use deadly force to prevent death or great bodily harm is a question of fact, the determination of which will not be disturbed upon review unless the evidence is so unsatisfactory as to justify a reasonable doubt as to guilt. (*People v. Hill* (1977), 53 Ill. App. 3d 280, 368 N.E.2d 714.) Accordingly, Felicia's contention that the State failed to sustain its burden of proof with regard to her affirmative defense of self-defense is without merit.

We then consider Felicia's assertion that because the evidence revealed that the shooting occurred during mutual combat, a verdict of attempted murder cannot stand. Once more we must defer to the judgment of the fact finder. The independent State witness, Deborah Lallie, testified that she was one step behind Arthur and Felicia on the escalator. She heard no argument between Felicia and Arthur, she saw no physical encounter between them, Arthur's back was to Felicia until Felicia called out his name, and Arthur neither said nor did anything prior to the shooting. Defendant's testimony contradicts the State's testimony. However, as previously pointed out, the determination of the witnesses' credibility is within the exclusive province of the trier of fact. (*Collins*, 106 Ill. 2d 237.) It is not unreasonable for the jury to accept the State's testimony. Had the incident occurred as Felicia stated, it is logical to assume that the independent witness, standing one step behind Felicia and Arthur and facing in their direction, would have seen such an occurrence. Accordingly, we find that the record in the instant case does not support Felicia's assertion that mutual combat occurred during and as a precipitate to the shooting incident.

Felicia next contends that her conviction for attempted murder must be reversed as the facts do not support a specific intent to kill. It is well settled that the specific intent to kill may be inferred from the surrounding circumstances, including the character of the assault upon the victim and other relevant matters. (*People v. Treadway* (1985), 138 Ill. App. 3d 899, 902, 486 N.E.2d 929; *People v. Ruiz* (1982), 94 Ill. 2d 245, 263, 447 N.E.2d 148.) In support of her argument on this issue, Felicia points to the circumstances of the shooting, *i.e.*, that it took place in a public location in broad daylight in the presence of scores of potential witnesses. She posits that had she been predisposed to commit murder, she had the perfect opportunity

to do so without witnesses the night before as he slept. She also points out that a more vulnerable part of the body would have been shot, other than the lower abdomen, had she intended to kill Arthur. Felicia's argument is without merit. We find nothing in the fact of the time and location of the occurrence that is *per se* inconsistent with a specific intent to kill. Once again we look to the function of the trier of fact. The jury was properly instructed that in order to return a verdict of guilty of attempted murder, it must find that Felicia intended to kill Arthur. On the date of the shooting, all of Felicia's actions led to the inescapable conclusion that she intended to kill Arthur. The evening prior, she went home to the safety and security of her home, but she did not remain there in that safe environment. Rather, she secured a loaded revolver from her drawer, secreted it in her purse and returned to the hotel where Arthur awaited her. After spending the night once again with Arthur, she and he left on the morning of May 8 in a taxi, the destination of which was 233 North Michigan Avenue, the site of Arthur's employment. Defendant's employment was at the other end of the Loop. Instead of dropping him there and continuing on to work, she exited the taxi at Arthur's place of employment, followed him into the building, began riding up on the escalator directly behind him, called out to him and when he turned to her, she pulled the gun out, pointed it at him, and pulled the trigger, striking him in the groin area. Felicia admitted that she was angry with Arthur because he "treated her like dirt"; and because she had spent a substantial sum of money on hotels, food and entertainment with the expectation of being reimbursed by him, only to find out that the $500 check which he had given her as reimbursement was written on a closed account.

Defendant speculates that the area of the wound is another indication that had she intended to kill him, she would have gone for a more vulnerable part of the body. However, this contention flies in the face of the testimony of the medical doctor, Dr. Rege, whose testimony revealed that a gunshot wound in the abdominal area is one of the most fatal and is almost 100% fatal without immediate medical attention.

Finally, in support of her argument regarding specific intent, she maintains that her actions were justified because Arthur struck her. The preceding discussion on self-defense and mutual combat is applicable here. Felicia was the only one to testify that she was struck, and the jury chose to believe the State's version and disregard her version. That is the proper function of the trier of fact. Accordingly, we are unable to say that the jury's determination was so unreasona-

ble, improbable or so unsatisfactory as to justify entertaining a reasonable doubt of Felicia's intent to kill.

■■ ■ The final issue raised on appeal relates to the trial court's refusal to allow the defense to interrogate Arthur about his allegedly violent background. Initially, the State argues that Felicia has waived this issue by failing to assert it in her written post-trial motion and also by failing to make an offer of proof during the trial when the testimony was excluded pursuant to the State's motion *in limine*. The statute requires that a written motion for a new trial *shall* be filed by Felicia and that the motion for a new trial *shall* specify the grounds therefor. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124; Ill. Rev. Stat. 1985, ch. 38, par. 116—1.) Even though an objection has been interposed during the trial, the requirement clearly mandated by the statute that the issue be set forth in a written post-trial motion cannot be ignored. (*Enoch*, 122 Ill. 2d at 187.) Additionally, "[a]n offer of proof is necessary where there is no other satisfactory indication as to the substance of evidence [citation], and the failure to do so is a waiver of any error in the exclusion of testimony [citation]." (*People v. Green* (1983), 118 Ill. App. 3d 227, 234, 454 N.E.2d 792.) Hence, we agree with the State that waiver has occurred.

■■ Notwithstanding our finding of waiver, Supreme Court Rule 615(a) provides, *inter alia*, that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (134 Ill. 2d R. 615(a).) Under the plain error doctrine, it is appropriate to review errors not preserved if the case is a close one or if it appears that substantial rights of a defendant would be affected if not reviewed. While we do not deem this case to be a close case, especially in light of the testimony of the independent, unimpeached witness, Ms. Lallie, we will nevertheless briefly discuss Felicia's final contention.

■■ The State moved *in limine* to bar Felicia from eliciting certain information from Arthur, the victim herein, regarding his prior criminal background. After a hearing on the motion, the court determined that Arthur had no convictions except one for soliciting for prostitution, and it ruled that no mention could be made of Arthur's arrest for murder or the circumstances of the alleged murder nor of the conviction for soliciting for prostitution. The court further stated a willingness to reconsider its ruling should the State "open the door" during the trial. The trial proceeded, and the record is devoid of any attempts by counsel for Felicia to elicit testimony from Arthur regarding his prior criminal background. This, of course, was in compli-

ance with the court's ruling on the motion *in limine*. However, the record is also devoid of defense counsel's tender of an offer of proof which could have guided the trial court, as well as this court of review, as to the nature and substance of the testimony which he anticipated would be forthcoming. In Felicia's brief, she argues that the court erred in excluding the testimony regarding Arthur's violent temperament and the jury should have been apprised thereof. However, Felicia has apparently disregarded the fact that the jury was made aware of the alleged violent propensities of Arthur through Felicia's own testimony. Felicia testified to the following:

"MR. HOWARD [Defense attorney]: Did you know whether or not this man [victim] had a reputation for violence?

A. Yes. A violent person.

Q. What type of violence did you know he had committed?

A. Murder. Beat up people, taken advantage of people most of the time.

Q. You knew he killed somebody?

A. Yes.

Q. How did you know that?

A. He talked about it. Other people knew about it."

Moreover, in closing arguments, defense counsel argued:

"MR. HOWARD [Defense counsel]: Let's just think about it. She knew him. Know what she said she knew about him? That he was a killer, and she said that she knew he had a reputation for being violent.

So, listen. I am going to tell you something. I have always been a peaceful man, but if I know that I'm going to deal with a fool, I think that I don't have to play my hand, but if I am going to be somewhere and talk to somebody and I think it might get out of hand and a situation where nobody else is around and I might have to deal with him, I am not going to be a fool and just come with just me.

\* \* \*

I was talking to you about common sense. See, when you— any relationship between your fellowman, a guy gives me a check like that and I know he has a reputation for beating up people and putting them on the ground and some things of that kind \* \* \*."

Clearly, the record reveals that notwithstanding the prior allowance of the State's motion *in limine* prohibiting reference to the alleged murder charge against the victim (which, according to the testimony elicited at the motion, did not result in a conviction), Felicia was allowed

to testify to her subjective belief regarding Arthur's reputation for violence and also testified that Arthur had committed murder (which apparently was not true). The jury was completely apprised that Felicia was cognizant of Arthur's alleged reputation for violence.

Defendant cites *People v. Adams* (1962), 25 Ill. 2d 568, 185 N.E.2d 676, and *People v. Davis* (1963), 29 Ill. 2d 176, 193 N.E.2d 841, in support of her contention that evidence of a violent disposition is admissible as tending to show the circumstances confronting the defendant, the extent of his apparent danger and the motive by which he was influenced. Both of the cases cited are distinguishable from the case at bar. In each of those instances our supreme court held that it was prejudicial error to exclude evidence as to the violent disposition of the decedent and prior threats or misconduct by the decedent directed towards defendant where defendant relies upon self defense. (*Adams*, 25 Ill. 2d at 572; *Davis*, 29 Ill. 2d at 130.) Nothing, however, in the record of the instant case even remotely suggests that Arthur had ever in the past exhibited violence towards Felicia. Hence, the cited cases are inapposite.

In *People v. Evans* (1981), 92 Ill. App. 3d 874, 416 N.E.2d 377, this court held that it was error to exclude testimony regarding defendant's knowledge of victim's prior conviction for murder. Having determined that, it went on to hold in that particular case that it was harmless error because the defendant was otherwise allowed to develop his defense. In the instant case, Arthur, unlike the victim in *Evans*, was never convicted of the murder. But even assuming that it was error to exclude the victim's testimony regarding the circumstances of the incident for which he was charged but not convicted, it was harmless error since, clearly, the defense was allowed to put before the jury by way of defendant's testimony that she feared him because she was under the impression that he was violent and had murdered an individual.

Accordingly, we find that the State has sustained its burden in every aspect as previously discussed and any error committed by the trial court in excluding testimony from Arthur regarding his background was harmless. Felicia's conviction and sentence are affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.