THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARRION ANDERSON, Defendant-Appellant.

First District (1st Division)   No. 1—88—1901

Opinion filed August 31, 1992.

Randolph N. Stone, Public Defender, of Chicago (Lisa S. Ottenfeld and Bruce Landrum, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Catherine A. Hufford, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

A jury convicted defendant Marrion Anderson of the murder of decedent Maurice Leveston, possession of a stolen motor vehicle and robbery. The circuit court sentenced defendant to 60 years' imprisonment. Defendant appeals his conviction and sentence arguing that (1) he was not proven guilty beyond a reasonable doubt; (2) the voluntary manslaughter instruction violated his due process rights by erroneously stating the burden of proof on the findings of unreasonable belief of self-defense and sudden intense passion; (3) his fourteenth amendment rights were violated when the circuit court barred decedent's former roommate's testimony; (4) the circuit court improperly admitted photographs of decedent and his organs; (5) the State argued facts not in evidence, improperly shifting the burden of proof and usurping the jury's function by referring to decedent as "victim" after the circuit court's admonishment not to do so; (6) the circuit court abused its discretion in sentencing him to an extended term of 60 years; (7) the State violated his due process rights by failing to inform him of lost evidence; and (8) he was denied effective assistance of counsel because defense counsel failed to request an instruction regarding the inference of the State losing evidence.

Prior to trial, the State moved to preclude the testimony of the decedent's former roommate. Defendant indicated that the former roommate would testify that decedent had, on previous occasions, invited young males to his apartment, taken them into his bedroom and shut the door. The circuit court granted the State's motion *in limine* to bar this testimony.

David Carroll testified on behalf of the State that he was a coworker of decedent. Carroll testified that decedent was scheduled to

work on March 26 and 27, 1986. Decedent did not come to work on either of those days. After several unsuccessful attempts to reach decedent, Carroll contacted decedent's brother, Bobby Leveston. Carroll also explained that he had been at decedent's apartment the previous Saturday and it had been neat, clean and organized. Carroll further testified that he had never seen anyone but decedent drive decedent's Cadillac. Carroll acknowledged that he was aware of decedent's homosexuality.

Next, Bobby Leveston testified that on March 25, 1986, at approximately 6 p.m., he telephoned decedent and invited him over to dinner. Decedent had declined, stating that he was going to stay at home and relax. Later that same evening, Leveston tried unsuccessfully to contact decedent by telephoning his home 15 to 20 times. On the morning of March 27, 1986, Carroll informed Leveston that decedent had not reported to work. Leveston went to decedent's apartment, but no one answered the door. Leveston told his aunt, Airlane Jedkins, who raised decedent, about the situation.

Robert Haynes, an engineer at Granville Beach Condominiums, testified that on March 26, 1987, at about 11 a.m., he received a telephone call from Jedkins. Jedkins stated that she had not heard from her son, decedent. Haynes testified that he and Bert Castillo, the building janitor, went to decedent's apartment. Haynes did not notice anything unusual in the hallway or around decedent's apartment door. When Haynes entered decedent's apartment, he observed the apartment was in disarray and some clothing covering someone in the middle of the living room. Haynes crossed the living room and shut a window. Then, Haynes said, "Hey, buddy, don't you think you ought to get up." After receiving no response, Haynes noticed a pillow over the person's head and a brown robe around the waist area. The body was naked. Haynes testified that decedent's hands were tied behind his back and full of excrement, as was the robe. Also, there was a wire tied to one leg. Haynes lifted the pillow off decedent's head and saw a belt around decedent's mouth and a bruise on his forehead. Since Haynes did not detect any signs of life, he replaced the pillow, locked the apartment and telephoned the police. Castillo's testimony corroborates this testimony.

Detective David Ryan arrived at the scene and found it as described above. Ryan notified decedent's brother, Fred Brown, who informed him that decedent parked his Cadillac at 6030 North Sheridan Road. Ryan went to the garage, and the manager told him that decedent's car was gone. All police in the city and the suburbs were given a description of the car along with the registration information.

Officer Susan Sherran testified that while on duty on March 29, 1986, she was on 30th Street and Kedzie Avenue and observed a four-door silver Cadillac approaching. Sherran recalled the description of decedent's car so she followed the Cadillac. The Cadillac pulled into a gas station. The Cadillac's license plate matched that of decedent's car. Sherran identified defendant as the driver of the Cadillac. The four occupants of the car were arrested.

Detective Thomas Sappanos testified that on March 29, 1986, he read defendant his *Miranda* warnings in an Area 6 interview room and that defendant indicated that he understood them. Defendant told Sappano that his girl friend, Linda Stevenson, who lived at 6141 North Sheridan Road, gave him the car as a reward for having sex. There was no building at 6141 North Sheridan Road nor was Linda Stevenson listed as a tenant at any building near the "fake" address. Sappanos then drove to 6171 North Sheridan Road, and using the keys which were taken from defendant at the time of his arrest, opened the door of decedent's apartment.

Herman Kluth, a fingerprint identification expert for the Chicago police department testified that on April 17, 1986, he compared the latent evidence from decedent's car to defendant's inked fingerprint impressions. Defendant's fingerprints were found on the car door, and his right palm print was found on the car. On April 24, 1986, Kurth identified defendant's fingerprints on the General Electric clock and a white plastic container found in decedent's apartment.

Dr. Barry Lifschultz performed the post-mortem examination on decedent on March 28, 1986. Lifschultz testified that there was bruising on the insides of decedent's lips, which was consistent with the pressure from the belt being tied around the face, but Lifschultz could not rule out the possibility that the bruising was caused by a punch. Decedent, however, was alive when he sustained the lip injury. There was also an abrasion on decedent's right forehead and on the left chin. Decedent's hands were tied behind his back with an electrical cord, which resulted in minimal hemorrhaging. Lifschultz could not rule out the possibility that the reason there was minimal hemorrhaging around the wrists and ankle was because they were bound after decedent was dead. There was hemorrhaging in the lining of the voice box and into the muscles covering the voice box. There was a bite mark on the tongue, which is often caused by strangulation, and hemorrhaging under the surface of the tongue. Further, Lifschultz determined that the cause of decedent's death was strangulation. To cause death in this manner, pressure would have had to be applied against the veins in the neck for approximately three to five minutes.

Lifschultz also testified that there was no evidence that decedent had been sexually assaulted.

Assistant State's Attorney Patrick McNerney testified that on March 30, 1986, he had a conversation with defendant after his *Miranda* rights had been given to him. McNerney testified that defendant told him that he first met decedent on Friday, March 21, 1986, in the vicinity of Clark and Lake Streets when decedent honked his horn and called defendant over to the car. Defendant got into decedent's Cadillac, they went and purchased alcohol and then went to decedent's apartment. At the apartment, decedent and defendant drank the alcohol and talked, after which decedent drove defendant back to the corner of Clark and Lake Streets. Defendant gave his telephone number to decedent, and decedent gave him $10.

McNerney also testified that defendant told him that on March 25, 1986, decedent telephoned defendant and they made arrangements for decedent to pick him up at the corner of Clark Street and Lake Street. After picking defendant up, decedent bought beer, then took defendant to his apartment. Defendant claimed that he and decedent drank the beer, smoked marijuana and discussed sex. Decedent asked defendant if he would have sex with him. Defendant consented to decedent performing oral sex on him three different times. Then, decedent went into the bathroom and returned wearing no pants and his hands full of petroleum jelly. Decedent requested defendant engage in anal sex with him; defendant agreed. Decedent put jelly on defendant's penis and on his own anus. Defendant said that he put his penis half way into decedent's anus and they began having sex. Defendant stated to McNerney that he withdrew his penis because he did not think it was healthy to place his penis into decedent's anus. Defendant told McNerney that decedent became upset and angry when defendant removed his penis. Decedent turned so that he was face to face with defendant. Then, decedent put his hands around defendant's waist in a hugging-type manner. Defendant explained that he began to choke decedent. Defendant managed to get behind decedent and choke him from behind. Defendant stated that he choked decedent until decedent collapsed.

After decedent fell to the ground, defendant searched the entire apartment for the keys to the Cadillac. Defendant told McNerney that when he saw decedent move, he grabbed an electrical cord and tied decedent's hands behind his back. Then, defendant took a telephone cord and bound decedent's feet. Next, defendant strapped a belt around decedent's mouth. When McNerney questioned defendant regarding the fecal matter on decedent's hands, defendant stated that

at one point he noticed fecal matter on his penis and hands so he wiped himself off with a towel.

First, defendant argues that he was not proven guilty of murder beyond a reasonable doubt because the State failed to disprove self-defense beyond a reasonable doubt. Self-defense is an affirmative defense which defendant may raise only if he presents some evidence of *each* element of the defense or if the State's evidence raises it. (*People v. Guzman* (1990), 208 Ill. App. 3d 525, 531, 567 N.E.2d 500, 505.) Such a defense is raised when (1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm is imminent; (4) the person threatened must actually believe (a) that a danger exists, (b) the use of force is necessary to avert the danger, and (c) the kind and amount of force which he uses is necessary; and (5) the above beliefs are reasonable. (*Guzman,* 208 Ill. App. 3d at 531, 567 N.E.2d at 505.) The use of deadly force is limited to those situations in which the threatened force will cause death or great bodily harm or the force threatened is a forcible felony. *People v. Ross* (1981), 100 Ill. App. 3d 1033, 427 N.E.2d 955.

■ The State argues that defendant did not set forth some evidence of each element of self-defense. We agree. Testimony pertaining to defendant's statement to a police officer indicates that an unarmed, 5-foot 3½-inch naked man weighing 140 pounds, who had three times previously performed fellatio on defendant the night of the killing and requested and engaged in anal sex with defendant, got angry and upset with defendant when defendant discontinued having anal sex. According to defendant's statement, decedent turned, faced defendant and put his arms around defendant's waist in a hugging-type manner. Defendant explained that then, he began to choke decedent and got behind decedent while he was still choking him. Even if we agree with defendant that the "hug" is some evidence of force, there is no evidence that the danger of harm was imminent. Moreover, defendant's alleged beliefs that a danger existed and that deadly force was necessary because the alleged threatened force might cause defendant death or great bodily harm were not "reasonable" beliefs. Defendant was 5 feet 9 inches tall and weighed 173 pounds at the time of the murder. Decedent was a man of substantially smaller stature than defendant, he was unarmed and naked. There is no evidence that it was reasonable for defendant to believe that choking decedent to death was necessary. Decedent putting his arms around defendant in a "hugging-type" manner is not evidence that defendant could have *reasonably* believed that decedent was threatening to do great bodily harm or cause defendant to die. As a matter of law, therefore, self-

defense was not raised because defendant failed to present some evidence of each of the elements of the affirmative defense. *Guzman*, 208 Ill. App. 3d 525, 567 N.E.2d 500.

Notwithstanding the above, defendant's argument also fails because the jury need not accept as true the evidence in favor of self-defense. (*People v. Johnson* (1988), 172 Ill. App. 3d 371, 377, 526 N.E.2d 611, 614-15.) There was medical testimony that decedent had not been sexually assaulted. This evidence tends to discredit the account which defendant gave to the police. A reviewing court should not disturb the jury's decision regarding self-defense unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of guilt. (*Johnson*, 172 Ill. App. 3d at 377, 526 N.E.2d at 614.) We do not make such a finding. In fact, after reviewing the evidence in a light most favorable to the State, we find that any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. See *People v. West* (1990), 137 Ill. 2d 558, 584, 560 N.E.2d 594.

■ Second, defendant argues that the jury was improperly instructed in light of *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141. The Illinois Supreme Court held that when the voluntary manslaughter instructions (Illinois Pattern Jury Instructions, Criminal, Nos. 7.04, 7.06 (2d ed. 1987) (herein after IPI Criminal 2d)) and the murder instruction (IPI Criminal 2d No. 7.01) are given together, they misstate the State's burden of proof regarding the mental state necessary to reduce a murder charge to voluntary manslaughter. (*Reddick*, 123 Ill. 2d at 194, 526 N.E.2d at 146.) *Reddick* applies retroactively, but does not mandate an automatic reversal of convictions arising from trials in which the above instructions were given. (*People v. Shields* (1991), 143 Ill. 2d 435, 575 N.E.2d 538.) In determining the effect of the above-given instructions on the validity of defendant's conviction, the instructions must be considered in light of the whole record, including the evidence and arguments presented. (*Shields*, 143 Ill. 2d at 445-46, 575 N.E.2d at 543.) Further, constitutional errors may be deemed harmless beyond a reasonable doubt. *Shields*, 143 Ill. 2d at 446, 575 N.E.2d at 543; *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

As previously discussed, there was no evidence that defendant believed he was in imminent danger of sustaining great bodily harm or death and defendant's statement to the police is discredited in large measure by the physical evidence. Although the *Reddick* error did occur, the evidence in support of the murder conviction is so clear and convincing that the jury's verdict would not have been different had

the correct instructions been given. (*People v. Austin* (1989), 133 Ill. 2d 118, 124, 549 N.E.2d 331, 332-33; see *Shields*, 143 Ill. 2d at 450, 575 N.E.2d at 545.) We, therefore, hold that the *Reddick* error was harmless beyond a reasonable doubt.

Third, defendant argues that the circuit court erred in barring the testimony of decedent's former roommate regarding the frequency of decedent inviting young males to his apartment, taking these males into his bedroom and shutting the door. After hearing argument, the circuit court granted the State's motion *in limine* to bar the above testimony. The State argued that the former roommate's testimony was irrelevant because he had no knowledge of the incident involving defendant and the roommate's testimony would not resolve any issue in dispute. Defendant argued that the testimony was relevant to prove he was invited to decedent's apartment.

■ Contrary to defendant's argument, whether or not defendant was invited to the apartment is irrelevant. The test for relevancy is whether the evidence offered tends to prove or disprove a disputed issue. (*People v. Molsby* (1978), 66 Ill. App. 3d 647, 657-58, 383 N.E.2d 1336, 1344.) There was no dispute regarding how defendant gained entry into decedent's apartment.

Relying on *People v. Berry* (1988), 175 Ill. App. 3d 420, 529 N.E.2d 1001, defendant also argues on appeal that decedent's former roommate's testimony should have been allowed to show decedent's aggressive and violent character because the issue of self-defense was disputed. Defendant, however, made no offer of proof that decedent's former roommate would testify that decedent displayed an aggressive and/or violent demeanor toward the males he invited to his apartment. Moreover, the State did not challenge defendant's theory that decedent had invited him over for sex. Since the testimony of decedent's former roommate did not tend to prove or disprove any issue in dispute, it was irrelevant, and the circuit court did not err in barring it.

■ Fourth, defendant argues that the circuit court improperly allowed the jury to view photographs of decedent's internal organs. Defendant has waived this issue by failing to preserve it for appellate review. It is well-settled law in Illinois that in order to preserve an issue for review, both a contemporaneous trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1131.) Defendant failed to include this issue in his written post-trial motion; therefore, he has waived review of it.

■ Fifth, defendant argues that the State's closing argument was not based on the evidence and was beyond reasonable inference, thereby depriving him of a fair trial. Defendant did not object during trial to the State's argument nor did defendant include this issue in the written post-trial motion; consequently, defendant also waived this issue. See *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1132.

Sixth, relying on *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503, defendant contends that the State shifted the burden of proof, thus violating his constitutional rights when the State argued: "that is the best defendant can give you a year and-a-half [*sic*] later." *Giangrande* is distinguishable from the case at bar. In *Giangrande*, the State argued, "Now where's the evidence that the defendant didn't do it?" (Emphasis omitted.) (*Giangrande*, 101 Ill. App. 3d at 402, 428 N.E.2d at 507.) This comment clearly addressed the central premise of our legal system, that one is innocent until proven guilty. The comment shifted the burden of proof because in essence it conveyed that defendant is guilty by virtue of being charged with the crime, and that during trial he must prove that he did not commit the crime.

■ In the present case, the comment was directed at the credibility and strength of defendant's evidence of self-defense. Defendant objected to this comment, and the circuit court, determining it was improper argument, promptly sustained the objection. Any prejudice which may have occurred because of the State's argument was cured by the circuit court immediately sustaining defendant's objection.

■ Seventh, defendant argues that the State usurped the jury's function as trier of fact by referring to decedent as the "victim." Defendant objected twice to the State's use of the word "victim" when referring to decedent. The circuit court sustained those objections. Defendant argues that the State was attempting to use the word "victim" to play on the sympathies and prejudices of the jury. A close reading of the record shows that this was not the case. It is evident that the State and McNerney were using the term "victim" because it was easier than reciting decedent's name, just as they used the term "defendant." After the circuit court admonished the State and McNerney to use decedent's name, they did so. This admonishment and later usage of decedent's name cured any prejudice which may have been caused by the alleged improper term. See *People v. Trask* (1988), 167 Ill. App. 3d 694, 713, 521 N.E.2d 1222, 1235.

Eighth, defendant contends that the circuit court abused its discretion when it sentenced him to 60 years' imprisonment. Defendant argues that he did not qualify for an extended term because the State

failed to demonstrate that the crimes were accompanied by brutal and heinous behavior.

The circuit court's sentencing decision is entitled to great deference and weight. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) The circuit court has a better opportunity to consider such factors as defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age along with the nature and circumstances of the crime. (*People v. Requena* (1982), 105 Ill. App. 3d 831, 435 N.E.2d 125.) Therefore, absent an abuse of discretion by the circuit court, a sentence will not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) A reviewing court may not substitute its judgment for that of the circuit court merely because it would have balanced the appropriate factors differently had the task of sentencing been its responsibility. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

■ In the present case, at the sentencing hearing, regarding aggravating factors, the circuit court judge cited defendant's previous record of armed robbery, and the facts that defendant tightly bound decedent's mouth with a belt, bound decedent's hands and feet and the manner of strangulation as evidence that defendant was "an exceptionally brutal person, a person that does not have regard for others, a person whose total behavior could easily be and has been one that will inflict wanton cruelty upon other people." The judge also took into account mitigating factors such as defendant had sought education and had a loyal family. The judge, however, believed that defendant was not "cognizant of his family and did not take advantage of their loyalty." Thereafter, the judge determined that defendant qualified for an extended sentence. Defendant's 60-year term is within the permissible range pursuant to section 5—8—2(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(1)). There is no evidence that the circuit court abused it discretion; thus, we affirm defendant's extended sentence.

■ Ninth, defendant contends that his due process rights were violated when the State failed to disclose that evidence was lost. Prior to trial, in answering discovery, the State claimed to have produced all of the medical examiner's reports and laboratory reports. The documents produced did not contain any information that Lifschultz had taken swabs of decedent's anus and mouth. Lifschultz testified that he took the swabs because cases of strangulation are frequently associated with sex crimes. Lifschultz, however, testified that there were no signs of sexual assault. Further, the State was not aware of the exist-

ence of any swabs until defense counsel discovered that they had been taken.

In order to establish a discovery violation which would warrant a new trial, defendant must show (1) that the evidence was favorable to him; (2) that the State failed to disclose the evidence after a specific request; and (3) the evidence was material. (*People v. Flax* (1986), 147 Ill. App. 3d 943, 498 N.E.2d 667.) Since defendant did not establish that the State knew about the swabs, it would have been impossible for the State to disclose that the swabs were lost. In addition, defendant did not show that this evidence was favorable to him. Defendant's due process rights were not violated.

Lastly, defendant argues that he was denied effective assistance of counsel because defense counsel failed to request an instruction regarding the loss of evidence. To sustain a claim of ineffective assistance of counsel, defendant must show actual incompetency on the part of the attorney that resulted in substantial prejudice, such that the result of the trial would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) If there is a lack of sufficient prejudice to defendant, we do not need to determine whether counsel's performance was deficient. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525-27, 473 N.E.2d 1246, 1256.) Defendant has the burden of showing actual prejudice. (*People v. Puente* (1984), 125 Ill. App. 3d 152, 158, 465 N.E.2d 682, 687.) To establish prejudice, defendant must demonstrate "not simply a possibility of prejudice, but that the claimed error worked to his actual and substantial disadvantage." (*People v. Owens* (1989), 129 Ill. 2d 303, 318, 544 N.E.2d 276, 282.) When determining whether a reasonable probability exists that but for counsel's error, the result of defendant's trial would have been different, an appellate court must review the totality of the evidence presented to the jury. *People v. Moore* (1990), 208 Ill. App. 3d 515, 522, 567 N.E.2d 466, 471.

Defendant contends that if the swabs would have indicated the presence of semen or petroleum jelly, it would have corroborated defendant's account of the killing. Sex, consensual or nonconsensual, is irrelevant to defendant's murder conviction. Actually, the State never disputed defendant's theory that he had sex with decedent. Furthermore, defendant still admitted to choking decedent until he was unconscious and binding decedent in the manner in which decedent was found. The evidence clearly and convincingly shows that defendant killed decedent. As for defendant's self-defense theory, the evidence of semen or petroleum jelly would not tend to prove that decedent was or was not aggressive or that deadly force was necessary.

Defendant failed to establish that he was prejudiced by the lack of defense counsel's argument or an instruction concerning the swabs. Consequently, defendant has not established a claim for ineffectiveness of counsel.

For the foregoing reasons, the conviction and sentence of the circuit court of Cook County are affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.