THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID ROBINSON, a/k/a David Gates, Defendant-Appellant.

Fifth District   No. 5—89—0855

Opinion filed May 29, 1991.

Daniel M. Kirwan and Edwin J. Anderson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kathleen Alling, State's Attorney, of Mt. Vernon (Kenneth R. Boyle, Stephen E. Norris, and Diane L. Campbell, all of State's Attorney's Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

David Robinson was charged with residential burglary on September 18, 1989, for knowingly and without authority entering the home of Kay Burroughs with the intent to commit aggravated criminal sexual abuse upon a 15-year-old girl (JK). A petition to revoke Robinson's probation on an earlier drug possession charge was also filed.

On October 27, 1989, a bench trial was conducted on both the residential burglary charge and the petition to revoke probation. The court found David Robinson guilty of residential burglary and revoked his probation. Robinson was sentenced to six years' imprisonment. Two issues are raised by the defendant on appeal: (1) whether JK's identification of Robinson is sufficiently trustworthy to sustain the verdicts; and (2) whether Robinson was denied effective assistance of counsel. We affirm.

Testimony at trial revealed that on September 15, 1989, Kay Burroughs left JK at her home to babysit Burroughs' daughter. Shortly after 5:30 p.m. JK and Burroughs' daughter went outside to the front yard and talked with the neighbors. JK testified that while talking with the neighbors she noticed a black man wearing a black coat with a white shirt and black pants walk along the other side of the street. She had never seen the man before, and her attention was focused on the man for "not more than a minute or so." The girls returned to the house to watch television at approximately 6 p.m. Burroughs' daughter went to bed at approximately 8:30 p.m. JK then opened the front door, which was located in the living room, and continued to watch television on the couch until she fell asleep.

JK was awakened by someone who came in the front door. She saw the person quietly shut the door and turn off the television, which left the only light in the room that which came from an outside streetlamp. She testified that the light from the streetlamp shined through the window located next to the front door, which is approxi-

mately 5 to 10 feet from the couch where she was lying. JK recalls that the person tugged at her blanket. She pushed the person away and asked, "[W]ho is it? Is it you Robert?" The intruder answered, "Yeah. Yeah, it's me, Robert."

JK explained that Robert is Kay Burroughs' boyfriend. She testified that once the intruder spoke to her she knew he was not Robert because she had met Robert once or twice before and would have recognized his voice. JK described Robert as a white skinny male with brown hair. She described the person in the living room as a black male of medium build, who had stringy hair. JK testified that on the night of the incident, the intruder had on strong cologne and was wearing black pants, a black jacket, and a white shirt.

JK testified that she asked the intruder what time it was and was told it was 11 p.m. The intruder then asked, "What time does she get home?" JK responded, "She works at Good Sam. She gets home at 11:00." By this time JK was sitting on the couch and the intruder was standing at the edge of the couch, approximately one or two feet away. He told her, "pull down your pants. I want to show you something." JK edged away from him and saw the light from a passing car through the living room window. She said, "Oh, God, she's home." The intruder headed quickly for another room in the house when JK ran out the front door. She ran next door and told the Richardsons what had happened. The police were called, and within a few hours JK was taken to the police station, where she identified the defendant as the intruder in a display of photographs.

Tommy Melton testified on behalf of the State. On the night of the incident he was at the Richardson house, located next door to the Burroughs residence. At around 10:30 p.m. he and the Richardson children and Mrs. Richardson were talking when they heard JK knocking on the front door. One of the Richardson children went to the back door and told JK to come to the back door. JK ran into the house and told them that a black man had tried to rape her. Melton testified that earlier that evening he had spoken with David Robinson at Robinson's parents' home, which is located diagonally across the street from the Richardson house. At that time Robinson had on black dress pants, a dark jacket, a white shirt, and smelled of strong cologne.

David Robinson testified on his own behalf. He lives with his mother and stepfather approximately four houses down the street from the Burroughs residence. According to Robinson, on the evening of the incident he finished mowing his lawn at around 4:30 p.m., took a shower, and got dressed. He put on black pants, a black and blue

shirt, and a black jacket, and at around 5:30 p.m. he walked down the street to a friend's house. Later that evening Robinson and his sister went to a disco and returned home at approximately 10:30 or 10:40 p.m. Both Augusta Gates and Murphy Peterson, defendant's mother and stepfather, were asleep when Robinson arrived home. Robinson testified that 15 or 20 minutes after he arrived home, his dog and other dogs in the neighborhood started barking. He got up to investigate, and about 10 or 15 minutes later his parents awoke. Robinson stated that it was past 11:30 p.m. when he went to bed.

Defendant's mother, Augusta Gates, testified that on the night of the incident she awoke at approximately 10:55 p.m. with a stomach ache. When she awoke she saw her son, the defendant, standing with the light on and the front door open. She asked him what was going on and he told her that he was trying to see why the dogs were barking.

Robinson claims that his conviction and probation revocation must be reversed because JK's identification was not sufficiently trustworthy to sustain the verdicts. He argues that the lighting conditions in the Burroughs living room the night of the incident were so poor that the victim mistakenly identified the defendant as the intruder since she had seen the defendant earlier that evening. Although different burdens of proof were necessary to sustain the conviction and the probation revocation, the State maintains that the evidence presented not only proved the defendant guilty by the preponderance necessary for the probation revocation (Ill. Rev. Stat. 1989, ch. 38, par. 1005–6–4(c)), but also was sufficient to prove the defendant guilty beyond a reasonable doubt (*In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068). We agree.

A single witness' identification is sufficient to convict if the witness is credible and she had the opportunity to view the accused under such circumstances as would permit a positive identification to be made. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320.) JK positively identified the defendant both from a photographic display and in court. JK testified that, although the living room was not directly lighted, light was provided via a streetlamp which shined through the living room window. Although she testified that for a portion of the time the defendant's features were "shadowed" because of the lighting conditions, at one point the intruder was standing directly in front of JK not more than one or two feet away. When asked on direct examination at what point she was positive that the man she had seen earlier that day and the intruder were the same person, JK testified, "When I—just when I saw him. I just—it registered right

then that it was the same man. He was wearing the same outfit I saw earlier. His hair was the same, and his—he was built the same that I saw earlier, and it was just him." JK's description of the defendant's appearance, clothing, and the strong cologne defendant wore was corroborated by State's witness Melton.

■ When presented with a challenge to the sufficiency of the evidence, it is not the function of the appellate court to retry the defendant. The question is whether the evidence, viewed in the light most favorable to the prosecution, could lead any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.) We may not substitute our judgment for the trial court in weighing the testimony or determining which witnesses were more credible. *People v. Hoffstetter* (1984), 128 Ill. App. 3d 401, 407, 470 N.E.2d 1247, 1251.

■ The trial court found JK's testimony credible. We find nothing in the record to suggest otherwise. Her description of the defendant was corroborated by Tommy Melton. In addition, we find that under the facts presented JK did have the opportunity to make a positive identification of the defendant. In light of our findings, we hold that the identification of Robinson as the intruder is sufficient to sustain the guilty verdict and the probation revocation.

Robinson also argues on appeal that he was provided ineffective assistance of counsel at trial because counsel failed to use a prior inconsistent statement made by JK for impeachment purposes or to admit it substantively under the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10.1). JK testified at trial that the man she saw in the house was wearing a black jacket, a white shirt, and black pants. Defendant contends that this testimony is inconsistent with a statement given by JK to the police the night of the incident wherein she stated, "I could tell he was wearing a casual jacket with dress pants but I could not tell the color." Robinson contends that this inconsistency is especially important because JK's identification of Robinson was the key element of the case. He argues that counsel's use of the statement to impeach the witness or as substantive evidence would have created doubt in the fact finder's mind as to the defendant's identification.

■ In order to establish that defendant was denied effective assistance of counsel, defendant must show that his counsel's performance was deficient, that is, counsel made errors so serious he was no longer functioning as the "counsel" guaranteed by the sixth amendment, and that the deficient performance prejudiced his de-

fense, that is, counsel's errors were so serious as to deprive defendant of a fair trial. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525-26, 473 N.E.2d 1246, 1255, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061, citing *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Counsel's performance is considered deficient if it falls below an objective standard of reasonableness. (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) To establish actual prejudice, defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) With these principles in mind, we now turn to defendant's contention.

■ Defense counsel attempted to provide an alibi defense, and also advanced the theory that JK misidentified Robinson because she had seen him earlier that evening. The State argues that it may have been to defendant's advantage to emphasize the consistencies between Robinson's appearance earlier that evening and JK's description. Based on the record we find that this theory is entirely plausible. Robinson admitted at trial that JK could have seen him walking down the street at approximately 5:30 p.m. Because evidence was presented that JK's description of the man in the house matched the description she gave of the man she had seen walking down the street, defense counsel's strategy could very well have been to emphasize that JK merely thought the two men were the same person because of their clothing. Were defense counsel to use JK's statement to the police that she did not know what color clothing the intruder was wearing, defendant's explanation of the allegedly mistaken identification would have been weakened.

The courts should not attempt to second-guess a defense counsel's trial strategy, and the courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (*People v. Hattery* (1985), 109 Ill. 2d 449, 461, 488 N.E.2d 513, 517.) In view of the foregoing, we do not find that counsel's conduct fell below the objective standard of reasonableness.

The judgments of the circuit court of Jefferson County are therefore affirmed.

Affirmed.

RARICK, P.J., and WELCH, J., concur.