THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHANIE RUSH, Defendant-Appellant.

Fifth District   No. 5—96—0430

Opinion filed January 16, 1998.

H. Kent Heller and David Stevens, both of Heller, Holmes & Associates, P.C., of Mattoon, for appellant.

Kerry Sutton, State's Attorney, of Carmi (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Stephanie Rush, was convicted after a jury trial in the circuit court of White County of first-degree murder and concealment of homicidal death. She was sentenced to 30 years' imprisonment for the murder and four years' imprisonment for the concealment, to run concurrently. Defendant appeals, contending the State failed to prove her guilty of either crime beyond a reasonable doubt. She also asserts that she was denied the effective assistance of trial counsel, that prejudice stemming from the prosecutor's improper closing argument justifies a new trial, and that the court's failure to grant her motion for a new trial constituted an abuse of discretion. We affirm.

In brief, the victim, the fiancee of defendant's nephew, was last seen alive on January 29, 1995. According to the evidence, defendant and the victim spent the afternoon of January 29 together, shopping at various stores and eating lunch. Defendant claimed she dropped the victim off near the victim's apartment at approximately 6 p.m. and went home to a Super Bowl party at her own apartment. When the victim did not return, her fiance and defendant's nephew, Eric, began making phone calls to locate her. He called defendant's apartment but never got an answer, apparently because the phone was not working. At approximately 1 a.m., Eric went to defendant's apartment. Defendant told him not to worry, that the victim probably went to stay with relatives. Eric returned a half-hour later, asking for money to buy cigarettes. Defendant informed him that the victim had bought him some that day and they were still in her truck. She claimed that the victim and Eric were to come over to her place to join the party after the victim went home to freshen up and that the victim would pick up her purchases at that time. By the next morning, the victim's family began searching for her. The victim's purse

was found approximately 40 yards from her apartment, on the route defendant claimed that the victim took after being dropped off. No other evidence of the victim's whereabouts surfaced until defendant's boyfriend found the victim's body on April 1, 1995, in a storage locker defendant rented. The victim had been shot in the back of the head and had died where she was found. No physical evidence connected defendant to the murder or concealment, but there was sufficient circumstantial evidence pointing to defendant to enable a jury to conclude she was guilty.

Defendant initially contends on appeal that her convictions for murder and concealment of a homicidal death must be reversed because she was not proved guilty of either crime beyond a reasonable doubt. We disagree.

■ When a challenge to the sufficiency of the evidence is presented on appeal, it is not the function of the reviewing court to retry a defendant. *People v. Banks*, 161 Ill. 2d 119, 135, 641 N.E.2d 331, 339 (1994). The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Moore*, 171 Ill. 2d 74, 95, 662 N.E.2d 1215, 1224 (1996); *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). This standard applies to the appeals of all criminal convictions, regardless of whether the nature of the evidence presented is circumstantial or direct. *People v. Pintos*, 133 Ill. 2d 286, 291, 549 N.E.2d 344, 346 (1989); *People v. Turner*, 282 Ill. App. 3d 770, 777, 668 N.E.2d 1058, 1063 (1996), *aff'd on other grounds sub nom. People v. Reed*, 177 Ill. 2d 389 (1997). The State is not required to exclude every reasonable hypothesis of innocence (*Pintos*, 133 Ill. 2d at 291, 549 N.E.2d at 346), and the jury need not be satisfied beyond a reasonable doubt of each link in the chain of circumstances (*People v. Campbell*, 146 Ill. 2d 363, 380, 586 N.E.2d 1261, 1268 (1992)). It is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of the accused's guilt. *Campbell*, 146 Ill. 2d at 380, 586 N.E.2d at 1268; *People v. Davis*, 278 Ill. App. 3d 532, 539, 663 N.E.2d 39, 44 (1996). Proof of guilt beyond a reasonable doubt does not require proof beyond any possibility of a doubt. *People v. Franklin*, 130 Ill. App. 3d 514, 519, 474 N.E.2d 776, 780 (1985). Moveover, when the determination of a defendant's guilt or innocence depends upon the credibility of the witnesses and the weight to be given their testimony, it is for the trier of fact to resolve any conflicts in the evidence. *People v. White*, 209 Ill. App. 3d 844, 868, 567 N.E.2d 1368, 1382 (1991). We, as a reviewing court, are not to substitute our judgment. *People v. Robinson*, 213 Ill. App. 3d 1021, 1025, 572 N.E.2d

1254, 1257 (1991). Although defendant has pointed out weaknesses in the State's proof, we cannot say that such efforts created a reasonable doubt of guilt. At best, defendant has raised questions of fact and credibility properly left for resolution by the jury. We conclude that the evidence is sufficient for a rational trier of fact to have found the elements of first-degree murder and concealment of a homicidal death beyond a reasonable doubt.

■ A person commits first-degree murder when, without lawful justification and with the intent to kill, he or she performs the acts that cause the death of another. See *Turner*, 282 Ill. App. 3d at 777, 668 N.E.2d at 1063. A person commits concealment of a homicidal death when he or she conceals the death of any other person with knowledge that the person died by homicidal means. See *People v. Cole*, 253 Ill. App. 3d 603, 611, 625 N.E.2d 816, 822 (1993); *Franklin*, 130 Ill. App. 3d at 519, 474 N.E.2d at 780. The evidence was sufficient for the jury to determine that defendant intentionally killed the victim by shooting her in the back of the head and leaving her body in defendant's storage locker for more than two months, while impeding others from entering the locker.

■ The evidence reveals that defendant was the last person to see the victim alive. On the day she disappeared, the victim and defendant spent the afternoon together, shopping and eating lunch. Once her body was found, it was determined that the victim had been shot and killed in the defendant's storage locker. The decomposition of the body established that the victim had been dead for a lengthy period of time. The lock to the locker showed no evidence of tampering, and defendant had the only set of keys. Days before her disappearance defendant had told the victim she would give her some wall hangings for her new apartment. The wall hangings were in the storage locker directly in front of the spot where the victim's body was found, and a ·footwear impression matching the victim's shoes was found on a chair in front of the victim's body. A reasonable finder of fact could have inferred that defendant got the victim to the locker with the promise of giving her the wall hangings and while she was inspecting them with her back to defendant, defendant shot and killed her. Other evidence revealed that the victim was shot with a .22-caliber gun. Defendant had access to such a gun prior to its allegedly disappearing in a burglary a couple of weeks before the murder of the victim. The gun was not listed as missing in the burglary report made to the police at the time of the incident. Defendant's boyfriend found a .22-caliber bullet in the driver's side door pocket of the truck defendant drove on the day the victim disappeared. When he showed it to defendant, she threw it away. The receipts from shop-

ping reveal that defendant had sufficient time to drive to her storage locker, shoot the victim, and return home between 6 and 7 p.m. Defendant's actions upon returning to her apartment also suggest she had been involved in the victim's death. Immediately upon entering the apartment, defendant changed her clothes and left again to purchase bleach and dye. Once she returned, she began doing laundry, even though there was an ongoing party in her apartment. A rational trier of fact could have concluded that defendant changed her clothes when she first arrived back at the apartment because they contained blood spatterings. She then washed and bleached or dyed her clothes to remove evidence of blood. Additionally, defendant never adequately explained why she did not drive the victim home or why the victim, who was not one to be without her cigarettes, left her cigarettes, lighter, and food in defendant's truck. Defendant showed no concern for the victim's disappearance when her fiance contacted her at 1 a.m. and she did nothing to help him find her. In fact, when the fiance later suggested that defendant check her storage locker, she refused. Within a month prior to the discovery of the victim's body, defendant's sister asked to get in the storage locker to retrieve a table and chairs she had stored there in order to sell them. Defendant claimed that the key to the locker was missing, and she offered to purchase the items herself. Days before the discovery of the body, defendant's boyfriend asked for the storage key to retrieve aluminum cans. Defendant again reported that the key was missing. The next day, however, she obtained an extra key from work, went to the locker, removed the cans, and gave them to her boyfriend. He thought the matter unusual and believed that defendant must be hiding something in the locker. The next day, he took defendant's key, drove out to the locker expecting to find evidence of defendant having an affair, and found the victim's body. A reasonable fact finder could have determined that defendant knew that the body was in the locker and was keeping others away to prevent its discovery. While defendant claimed she did not see the victim's body in the locker when she entered to retrieve the cans, investigating officers testified that one only needed to enter the locker about two feet to see the body.

Other evidence revealed that defendant did not like the victim and probably killed her because she was angry the victim had possession of jewelry that had been stolen from defendant's apartment a couple of weeks prior to the victim's disappearance. Defendant was extremely angry her jewelry had been taken and confided in others that she believed that her nephew, the victim's fiance, had committed the burglary. Days before her disappearance, the victim told her

grandmother she had found some of defendant's jewelry in her apartment and was afraid to return it to defendant because she thought defendant would believe she had stolen it. According to defendant, during their shopping trip together the victim either told her about the jewelry or returned it.

Shortly after the victim's disappearance, defendant suggested several possible suspects and scenarios as to the victim's disappearance. After the victim's body was discovered, defendant remarked to a fellow employee she was sure she was going to prison. And about the time she believed she would be indicted for murder, defendant became pregnant and bragged to other employees she could see herself "waddling into court pregnant and the jury thinking she couldn't have killed anybody." Other evidence suggested that defendant believed she could get away with murder. She read numerous books about murder and discussed with fellow employees ways to commit the perfect crime and dispose of a body.

All of the evidence taken together is more than sufficient to satisfy a jury beyond a reasonable doubt of defendant's guilt. Accordingly, we will not disturb the jury's verdict.

Defendant next contends that the prosecutor misstated evidence, argued facts not in evidence, and made inflammatory remarks during closing argument, all of which prejudiced her to the extent she is entitled to a new trial. We initially note that defendant failed to object to the allegedly improper comments at trial or raise them in any posttrial motion, thereby waiving any possible error. *People v. Camden*, 219 Ill. App. 3d 124, 139, 578 N.E.2d 1211, 1222 (1991); *People v. Walton*, 199 Ill. App. 3d 341, 345-46, 556 N.E.2d 892, 895 (1990). Moreover, improper closing argument does not constitute plain error unless the error is so flagrant as to threaten the deterioration of the judicial process or so prejudicial as to deprive defendant of a fair trial. *People v. Lucas*, 132 Ill. 2d 399, 435, 548 N.E.2d 1003, 1017 (1989); *People v. Williams*, 249 Ill. App. 3d 102, 103, 619 N.E.2d 233, 234 (1993). We cannot say that any of the complained-of remarks reached the level of depriving defendant of a fundamentally fair trial.

■ When a court reviews allegations of prosecutorial misconduct, the closing arguments of both the State and the defendant must be examined in their entirety and the comments complained of must be placed in their proper context. *People v. Cisewski*, 118 Ill. 2d 163, 175-76, 514 N.E.2d 970, 976 (1987). It must also be remembered that prosecutors are afforded wide latitude in closing argument. *People v. Williams*, 147 Ill. 2d 173, 231, 588 N.E.2d 983, 1005 (1991). Additionally, the prosecutor has a right to comment upon the evidence pre-

sented and make any reasonable inferences arising therefrom, even if those inferences are unfavorable to defendant. *People v. Hoffstetter*, 203 Ill. App. 3d 755, 778, 560 N.E.2d 1349, 1364 (1990). And if the trial court instructs the jury that closing arguments are not evidence, any error resulting from the prosecutor's remarks is considered cured. *Camden*, 219 Ill. App. 3d at 141, 578 N.E.2d at 1223.

■ Several of the comments about which defendant complains were not misstatements of the evidence, as defendant contends, but rather constituted reasonable inferences from the evidence. For example, the pathologist testified the victim died two to four hours after eating a meal consisting of salad-type material. Defendant testified she and the victim ate salad at the Olive Garden Restaurant at about 3 p.m. The victim was last seen alive at 6 p.m. The prosecutor legitimately made the reasonable inference that the contents of the victim's stomach resulted from having eaten at the Olive Garden Restaurant with defendant on the day she disappeared. Defendant was free to argue that her meal with the victim at Olive Garden was not necessarily the victim's last meal, just as the prosecutor was free to argue that it was.

As for the alleged statements which defendant contends were made solely to arouse the passions of the jury, we agree with the State that the remarks to which defendant refers were instead proper comments upon the evidence. Specifically, defendant finds fault with the references to her books and obsession with murder as a possible motive for killing the victim. Evidence that tends to establish that the accused had a motive for killing the victim is relevant, and if the evidence, at least to a slight degree, tends to establish the motive relied on, it is also competent. *Lucas*, 132 Ill. 2d at 427, 548 N.E.2d at 1014. The evidence revealed that defendant possessed and read numerous books involving murder. She discussed the topic with fellow employees and solicited their ideas about how to commit the "perfect" murder. She even bragged she would know how to murder someone if she ever did it. It was not unreasonable for the prosecutor to legitimately infer that defendant was obsessed with murder, and with her general dislike of the victim, her extreme anger that someone stole her jewelry, and her learning that the victim had possession of some of the stolen jewelry, this evidence constituted an acceptable theory as to why defendant murdered the victim.

After reviewing all of defendant's contentions, we conclude that the prosecutor's closing argument was based on the evidence and reasonable inferences therefrom and therefore was proper. And any misstatements of the evidence were cured by the trial court's instructions to the jury that closing arguments are not evidence. Accordingly, we find no reversible error.

Defendant next complains her trial counsel was ineffective to the point that her convictions must be reversed and new counsel must be appointed. We conclude that defendant has failed to meet her burden of establishing ineffective assistance.

■ To establish the ineffective assistance of counsel, a defendant must show that her attorney's representation fell below an objective standard of reasonableness and that her counsel's shortcomings were so serious as to deprive her of a fair trial. *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255 (1984); *People v. Anderson*, 234 Ill. App. 3d 899, 911, 601 N.E.2d 831, 839 (1992). To establish actual prejudice, the defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceedings would have been different. *Robinson*, 213 Ill. App. 3d at 1026, 572 N.E.2d at 1257. A reviewing court is to examine the totality of the evidence presented (*Anderson*, 234 Ill. App. 3d at 911, 601 N.E.2d at 839), applying a heavy measure of deference to counsel's judgment (*People v. Orange*, 168 Ill. 2d 138, 149, 659 N.E.2d 935, 940 (1995)), and not judge counsel's performance based on hindsight (*People v. Whittaker*, 199 Ill. App. 3d 621, 627, 557 N.E.2d 468, 471 (1990); *People v. Jenkins*, 190 Ill. App. 3d 115, 139, 545 N.E.2d 986, 1002 (1989)). If we can dispose of the claim of ineffective assistance on the ground that defendant has failed to demonstrate sufficient prejudice, we need not determine whether counsel's performance was deficient. *Albanese*, 104 Ill. 2d at 527, 473 N.E.2d at 1256.

■ Defendant's first allegation of ineffective assistance of counsel concerns the failure to discover and investigate Debra Brown as a witness. Brown claimed to have seen defendant and the victim outside defendant's apartment at 6 p.m. the night the victim disappeared. Defendant believes that Brown's testimony supports her version that she let the victim out of her truck near her apartment at the end of their shopping trip. Whether a failure to investigate and present evidence is incompetent depends upon the value of the evidence. Counsel's failure to present irrelevant evidence is not incompetence. *People v. Pope*, 284 Ill. App. 3d 330, 335, 672 N.E.2d 65, 68 (1996). The record reveals that defense counsel knew nothing about Brown's existence prior to trial. Brown contacted defendant after her conviction to tell her what she saw. Looking at the circumstances known to counsel at the time of their investigation, there is no basis for concluding that counsel failed to conduct a proper investigation. See *Orange*, 168 Ill. 2d at 150, 659 N.E.2d at 941. Moreover, to prevail on a claim of ineffective assistance of counsel based on a failure to investigate, defendant must show that substantial prejudice resulted and that there is a reasonable probability the final result would have

been different had counsel properly investigated. 168 Ill. 2d at 151, 659 N.E.2d at 941. Even had counsel's investigation uncovered Brown's information, there is no reasonable probability her testimony would have changed the result of the trial in this instance. Brown's testimony in fact conflicted with defendant's version of what happened. Defendant's version was that she and the victim were alone in a truck and not with a third woman in a car, as Brown claimed. Defendant never mentioned the existence of a blue car that acted suspiciously in front of them, as Brown claimed. Brown's information therefore had little relevance and had little probability of changing the result of the trial.

■ Defendant next argues defense counsel failed to argue to the jury that the State had not proved the time of the victim's death. The time of death is not an element of either offense. Moreover, evidence that the victim died shortly after returning from shopping was strong. To suggest that the victim died on a later day within two to four hours after eating another salad would have strained credulity. Counsel cannot be considered ineffective for refraining from advancing such an argument.

■ Defendant further finds fault with defense counsel's failure to object to the prosecutor's improper closing argument. As already discussed, the remarks now contended to be improper were based on the evidence or were proper inferences from the evidence, and any misstatements were cured by the trial court's instructions to the jury. Counsel's failure to object, therefore, does not constitute ineffective assistance. Defense counsel ably represented defendant throughout the trial proceedings as a whole. Defendant has not met her burden of proving that counsel's representation fell below an objective standard of reasonableness or that, absent counsel's errors, the result of the trial would have been different.

Defendant's final point on appeal again involves the information learned from Brown. Defendant asserts that the court erred in denying her motion for a new trial based on newly discovered evidence, namely, the information possessed by Brown. Defendant also claims that the newly discovered evidence was exculpatory evidence that the State failed to disclose in discovery. We find that the trial court properly exercised its discretion in denying the motion.

■ To warrant a new trial, newly discovered evidence must be so conclusive that it will probably change the result on retrial, it must be material to the issue and not merely cumulative, it must have been discovered after trial, and it must not have been discoverable prior to trial through the exercise of due diligence. *People v. Woodrome*, 237 Ill. App. 3d 220, 234, 604 N.E.2d 486, 496 (1992); *People v.*

*Haun*, 221 Ill. App. 3d 164, 175, 581 N.E.2d 864, 872 (1991). Motions for a new trial based on newly discovered evidence are not favored and are subjected to the closest scrutiny. *People v. Waldroud*, 163 Ill. App. 3d 316, 319, 516 N.E.2d 623, 625 (1987). The decision whether to grant a new trial based on newly discovered evidence rests within the discretion of the trial court and will not be disturbed on appeal absent a showing of a manifest abuse of that discretion. *Haun*, 221 Ill. App. 3d at 175, 581 N.E.2d at 872. As for the failure to disclose, the State's duty is limited to evidence that would negate the defendant's guilt, determined retrospectively by examining whether there is a reasonable probability that the result of the trial would have been different. See *People v. Carlson*, 224 Ill. App. 3d 1034, 1042, 586 N.E.2d 1368, 1374 (1992). We cannot say that there is a reasonable probability that the result of the trial would have been different had the State disclosed the evidence or had defendant discovered it prior to trial. Brown's information was neither conclusive nor material to the issues.

■ At the hearing on the posttrial motion, Brown testified she saw defendant and the victim exiting a car near defendant's apartment about 6 p.m. on January 29, 1995. (In her initial statement to the police, Brown reported she saw three females. Later she reported only seeing two.) As Brown passed the girls, a man driving a blue hatchback-type car recklessly pulled out of an alley in front of Brown, made a U-turn in the intersection, and stopped, facing the girls. After driving on to two other places, Brown saw the same man in the same car at a bridge near her home. The court determined that Brown's testimony was not credible. Moreover, Brown's testimony was irrelevant, having little tendency to negate defendant's guilt. Defendant was with only one other female, the victim. They went shopping in defendant's truck. Defendant never mentioned in her statements to the police the presence of a blue hatchback, even though she tried to cast suspicion on several other people. The police investigation of the owner of the blue hatchback established that he had a good alibi for his whereabouts at 6 p.m. on January 29, 1995. Brown also testified she noticed a turquoise-and-silver bracelet on the left arm of the victim, yet the victim's sister testified the victim owned no such bracelet and usually did not wear bracelets at all. Brown also claimed she purchased food from a nearby restaurant after seeing the blue car. One of the owners of the restaurant testified that the establishment was not open at the time Brown allegedly stopped. Moreover, Brown's testimony at the posttrial hearing differed materially from her pretrial statements. Given all of the contradictions, Brown's information was not so conclusive that it

would probably change the result on retrial. Accordingly, we find no error in the denial of defendant's motion for new trial.

For the aforementioned reasons, we affirm defendant's convictions.

Affirmed.

KUEHN and HOPKINS, JJ., concur.