NOTICE

Decision filed 01/27/22. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2022 IL App (5th) 190301-U

NO. 5-19-0301

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 17-CF-713 |
| | ) | |
| EAZS A. HARPER, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: In this direct appeal, the defendant's convictions and sentences are affirmed, because the trial judge did not err when he did not exclude from trial *all* evidence of the circumstances surrounding the arrest of the defendant, and because no error requiring reversal resulted from the State's closing argument.

¶ 2    The defendant, Eazs A. Harper, appeals his convictions and sentences, after a trial by jury in the circuit court of St. Clair County. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    We present only those facts necessary to our disposition of this appeal, which are as follows. The defendant was charged in this case with a number of offenses. Ultimately, he was tried by a jury, convicted, and sentenced on three of those charges: first degree murder, attempted first degree murder, and possession of a firearm by a felon. He was sentenced to 49 years in the

1

Illinois Department of Corrections for the first degree murder conviction, 31 years for the attempted murder conviction, and 14 years for the possession of a firearm by a felon conviction, with the first two sentences to run consecutively to one another, and the third to run concurrently therewith. All of the charges against the defendant stemmed from the murder of Kyle Savant, and the wounding of Sam Randall, by the defendant on June 3, 2017.

¶ 5    At the defendant's jury trial, the following events of relevance to the sole issue raised by the defendant in this appeal occurred. Randall testified that he was presently 35 years old, and that he and Savant had been friends since Savant "was 12, 13 years old," and were also coworkers. On June 3, 2017, he and Savant were working on Randall's pickup truck and needed alternator brackets. They went to a parts store called U-Pic-A-Part. After they found their part, paid for it, and began to leave, they stopped to speak with a group of four people—three men and one woman—who had been in front of them in line at the store. Randall testified that he had never met any of the four people prior to that day. The four people were having trouble with the stereo system in the black SUV they were in, which Randall identified in a photograph that was admitted into evidence. Randall testified that the stereo system had, *inter alia*, "[w]ire messes everywhere," and that the system was "poorly installed." He testified that he and Savant looked at the stereo system with the group for approximately "eight or ten minutes," then left.

¶ 6    Randall testified that later that afternoon, Savant told him that Savant had been on the phone with one of the members of the group and planned to purchase some "weed" from them. He and Savant were also going to try to help the group with the problems with their stereo system. They met the group at a BP gas station in Washington Park. Savant left the truck and spoke to the group in the black SUV, who Randall testified were the same four people who they spoke to at the parts store. Savant returned to Randall's truck and told Randall they were going to follow the black SUV "right around the corner," where one of the members of the group lived. Randall followed

2

the black SUV until it pulled over in front of a house. He testified that Savant got out of the truck and met one of the members of the group at the back of the black SUV. A member of the group waved for Randall to turn his truck around on the narrow street, and after Randall did so, and was facing the front of the black SUV, he saw that one member of the group was holding a "compact" handgun to Savant's chest.

¶ 7 Randall testified that he could see Savant patting his own pockets, as if telling the man that Savant had "nothing" of value. Randall identified the defendant as the man who was holding the gun to Savant's chest. He testified that he did not have "any doubt" that the defendant was the man, and he testified that the defendant was one of the men he saw earlier at the parts store and at the gas station. He testified that the defendant shot Savant in the chest, and that another member of the group then opened the door to Randall's truck, took the keys out of the ignition, and began "stuffing his hands" into Randall's pockets. As Randall fought with the man, the defendant approached the truck and shot Randall. In total, the defendant shot Randall "two or three" times. The defendant and the other members of the group then fled the scene.

¶ 8 During the course of his testimony, Randall authenticated photographs of footage from various surveillance cameras at or near the parts store and the BP gas station, which subsequently were admitted into evidence, and all of which were consistent with Randall's testimony about the events of June 3, 2017. Randall also authenticated Savant's cell phone, and that it was in Savant's possession on the day of the shooting. Randall testified that several days after the shooting, when Randall was still in the hospital, he picked the defendant's photo out of an array that was presented to him and identified the defendant as the person who shot both Savant and Randall. He again testified that he had no doubt that the defendant was the man who shot him, and who shot Savant. On cross-examination, Randall clarified that it was the defendant, rather than another member of the group, who instructed him to turn his truck around in the narrow street, prior to the shootings.

3

¶ 9     Detective Robert "Bo" Ficker of the Pontoon Beach Police Department testified that on June 9, 2017, while he was on duty, he observed a "black Dodge Journey minivan" turn into the parking lot of a motel, slowly drive through the parking lot, then stop. He authenticated a photograph of the vehicle and testified that he later learned that it was the defendant who was driving the vehicle that day. He ran the registration of the vehicle and learned that it was registered to a woman named LaToya Smith at an address about a mile and a half away from the motel. He followed the vehicle as it left the motel and observed the defendant driving erratically after passing a marked patrol car. He testified that the defendant committed traffic violations, and that the vehicle subsequently was stopped by police. Ficker made an in-court identification of the defendant as the person who was driving the vehicle, then testified that the defendant was taken into custody, and the vehicle was impounded and inventoried. Ficker authenticated photographs of the interior of the vehicle, including its stereo system and speakers. He testified that a cell phone was found on the front passenger seat of the vehicle, next to where the defendant had been driving. He testified that no one else had been present in the vehicle, other than the defendant, at the time of the traffic stop. He testified that both the vehicle and the cell phone were remanded to the custody of the Illinois State Police Homicide Unit, who had indicated they were investigating the defendant. Testimony provided by a subsequent law enforcement witness established the existence of phone calls, and a text message, on June 3, 2017, between Savant's cell phone and the cell phone recovered from the defendant at the time of his arrest, and established other connections between the latter phone and the defendant that suggested to the witness that it was the defendant's cell phone.

¶ 10    During the course of a closing argument that spans approximately 14 pages in the transcribed record on appeal, counsel for the State at one point stated the following:

4

"And the defendant gets arrested in Pontoon Beach driving a black Dodge Journey. Now, speaking of that arrest, Bo Ficker testified that when the defendant was being followed by a marked patrol car, all of sudden, he couldn't keep a lane of travel and he made a right-hand turn from the left lane. Why would he do that? Why would he be so evasive? Because when you've just committed a murder nine days—I'm sorry, six days earlier, you don't really want the police following you."

¶ 11 The defendant's erratic driving was not mentioned again in either the State's closing argument, or that of the defendant. Following the conviction and sentencing of the defendant, as well as the disposition of the defendant's posttrial filings, this direct appeal was timely filed. Additional facts will be presented as necessary throughout the remainder of this order.

¶ 12                                                  II. ANALYSIS

¶ 13 The sole claim of error raised by the defendant in this appeal is his contention that the trial judge erred by not excluding *all* evidence of the circumstances surrounding the arrest of the defendant on June 9, 2017. He claims the evidence was both irrelevant and unduly prejudicial, because the evidence allowed the State to argue that the defendant appeared nervous due to his involvement in the charged crimes when he was pulled over by police six days after the events in this case. He contends that at trial, the State argued in its closing argument that the defendant was nervous because the defendant had committed the crimes six days earlier. He argues in this appeal, however, that the defendant may have been nervous at the time of his arrest because he knew he possessed cannabis, cocaine, and MDMA in his vehicle, information that he contends the trial judge correctly excluded from trial due to its prejudicial nature. He argues that the trial judge's "failure to exclude all evidence about this arrest allowed the State to unfairly argue, and the jury to inaccurately infer, consciousness of [the defendant's] guilt of the charged crime[s]." He contends, as he did in his posttrial motion, that the trial judge's decision not to entirely exclude the

arrest made it impossible for the defendant, without opening the door to the admission of the drug-related circumstances surrounding his arrest, to rebut the State's inference that his nervousness indicated consciousness of guilt about the events in this case.

¶ 14    In support of this argument, the defendant contends that "[t]here was no strict necessity for the jury to hear why and how [the defendant] came to be in custody on June 9, 2017, while omitting details relating to drugs that gave the encounter its correct context." He argues that accordingly, the admission of *any* information about the arrest amounted to the admission of other-crimes evidence, which he contends was improper because "the fact of the arrest and selective details gave the jury a wrong impression [that] did not fit into the categories in which courts allow other-crimes evidence such as motive, intent, identity, lack of mistake, and modus operandi." He asks this court to reverse his conviction and remand for a new trial. He does not argue insufficiency of the evidence used to convict him, or that, accordingly, principles of double jeopardy would prevent a retrial were this court to reverse his conviction.

¶ 15    The State responds on appeal by contending that the evidence presented at trial regarding the arrest of the defendant "was permissible in that it established how the police came into possession of [the] defendant's vehicle and recovered items of evidentiary value to the murder case." In particular, the State points out that the vehicle was the same one used by the defendant when he committed the murder and other offenses of which he was convicted in this case, and was positively identified as such at trial by Randall. The State also points out that the defendant was the lone occupant of the vehicle at the time of his arrest, and that a cell phone found on the passenger seat next to the defendant at that time contained a text message and phone calls between the defendant and Savant on the day of the murder and other events in this case. The State also points out that at trial, there was no objection to the State's closing argument, and that no objection to that argument was made in the defendant's posttrial filings in the trial court either.

6

¶ 16    The State notes that the defendant's argument on appeal is, essentially, that "the testimony regarding the traffic stop itself constituted 'other-crimes evidence' which should have been excluded." The State rebuts this argument by contending that other-crimes evidence is in fact admissible if it is relevant to establish *any* material question other than the propensity to commit a crime, and adds that the Illinois Supreme Court has made it clear that evidence of the course of the investigation into a crime and the events leading up to an arrest are relevant when necessary and important to a full explanation of the State's contentions at trial. The State reiterates its contention that the evidence regarding the arrest of the defendant in this case was proper because it (1) allowed for the positive identification at trial, by Randall, of the vehicle in which the defendant was arrested as the one used by the defendant on the day of the murder; (2) informed the jury that the contents of the recovered vehicle driven by the defendant at the time of his arrest, specifically the stereo and speaker equipment, were consistent with what Randall testified he saw inside the vehicle on June 3, 2017; (3) established that the vehicle was registered to LaToya Smith, who was one of the four members of the group that included the defendant on June 3, 2017; and (4) established the first links in the chain of custody for the data found on the defendant's cell phone and the relationship between that cell phone and Savant's cell phone as relevant to the defendant's crimes in this case.

¶ 17    With regard to the closing argument, the State reiterates its view that because no objection was made at trial or in posttrial filings, the defendant's contention on appeal has been forfeited. The State notes that the defendant has made no attempt to avoid forfeiture by arguing that the plain-error doctrine applies in this case. The State argues that even if this court were to invoke the plain-error doctrine on behalf of the defendant, the defendant would not prevail, because in the absence of error, there can be no plain error. The State notes the well-established rule that prosecutors must be given wide latitude in closing argument, and that reversal based upon closing

7

argument is warranted only if the defendant suffers "substantial prejudice." The State also notes the well-established rule of law that a defendant's nervousness may, under appropriate circumstances, be construed by the trier of fact as consciousness of guilt, and argues that it was not improper for the State to note the defendant's erratic driving, just prior to his arrest, in its closing argument in this case. The State further notes that the argument in question "was but a very small part of a substantial closing argument presented by the State," was never mentioned again by defense counsel or the State, and therefore simply cannot, under any circumstances, be construed as having visited "substantial prejudice" upon the defendant. The State argues as well that the evidence in this case was not closely balanced, as required for the plain-error doctrine to apply under the circumstances of this case. The defendant did not file a reply brief in which to respond to the State's contentions on appeal.

¶ 18     We agree with the State that there was no error in this case, and that the defendant is not entitled to a new trial. "The determination as to whether evidence is relevant and admissible is within the sound discretion of the trial court, and its ruling will not be reversed absent a clear abuse of discretion resulting in manifest prejudice to the defendant." *People v. Gonzalez*, 379 Ill. App. 3d 941, 948-49 (2008). Moreover, "evidence of the course of the investigation into a crime and the events leading up to an arrest are relevant when necessary and important to a full explanation of the State's case." *Id*. at 950. The State is absolutely correct that in this case, Ficker's testimony about the arrest of the defendant was necessary and important to a full explanation of the State's case because Ficker's testimony (1) allowed for the positive identification at trial, by Randall, of the vehicle in which the defendant was arrested as the one used by the defendant on the day of the murder; (2) informed the jury that the contents of the recovered vehicle driven by the defendant at the time of his arrest, specifically the stereo and speaker equipment, were consistent with what Randall testified he saw inside the vehicle on June 3, 2017; (3) established that the vehicle was

registered to LaToya Smith, who was one of the four members of the group that included the defendant on June 3, 2017; and (4) established the first links in the chain of custody for the data found on the defendant's cell phone, and the relationship between that cell phone and Savant's cell phone as relevant to the defendant's crimes in this case. Moreover, none of Ficker's testimony reasonably could be construed as other-crimes evidence, as the State and Ficker were careful to ensure that no mention of any other crimes—as opposed to minor traffic violations—committed by the defendant was made by Ficker. The admission of Ficker's testimony was not error. Even if we were to accept, for the sake of argument, that it was erroneous, we do not believe any rational court of review could find that any such error resulted "in manifest prejudice to the defendant." See *id*. at 948-49. Accordingly, any purported error does not provide grounds for reversal in this case. See *id*.

¶ 19     We turn now to the defendant's allegations regarding the State's closing argument. "When a court reviews allegations of prosecutorial misconduct, the closing arguments of both the State and the defendant must be examined in their entirety and the comments complained of must be placed in their proper context." *People v. Rush*, 294 Ill. App. 3d 334, 340 (1998). It is well established "that prosecutors are afforded wide latitude in closing argument." *Id*. It is also well established that a "prosecutor has a right to comment upon the evidence presented and make any reasonable inferences arising therefrom, even if those inferences are unfavorable to defendant." *Id*. at 340-41. In addition, "if the trial court instructs the jury that closing arguments are not evidence, any error resulting from the prosecutor's remarks is considered cured." *Id*. at 341. It is also true that a prosecutor's "improper remarks will not merit reversal unless they result in substantial prejudice to the defendant." *People v. Kitchen*, 159 Ill. 2d 1, 38 (1994).

9

¶ 20    In this case, as noted above, during the course of a closing argument that spans approximately 14 pages in the transcribed record on appeal, counsel for the State at one point stated the following:

> "And the defendant gets arrested in Pontoon Beach driving a black Dodge Journey. Now, speaking of that arrest, Bo Ficker testified that when the defendant was being followed by a marked patrol car, all of sudden, he couldn't keep a lane of travel and he made a right-hand turn from the left lane. Why would he do that? Why would he be so evasive? Because when you've just committed a murder nine days—I'm sorry, six days earlier, you don't really want the police following you."

The defendant's erratic driving was not mentioned again in either the State's closing argument, or that of the defendant. The State is correct that because no objection to the State's closing argument was made at trial or in posttrial filings, the defendant's contention on appeal has been forfeited, and is likewise correct that even if this court were to invoke the plain-error doctrine to avoid forfeiture, the defendant would not prevail, because in the absence of error, there can be no plain error. We conclude that the State's passing comment, quoted above, was, as the State puts it on appeal, "but a very small part of a substantial closing argument presented by the State," was never mentioned again by defense counsel or the State, and therefore simply cannot, under any circumstances, be construed as having visited "substantial prejudice" upon the defendant. We also agree with the State that the evidence in this case was not closely balanced, as required for the plain-error doctrine to apply under the circumstances of this case. Indeed, the evidence of the defendant's guilt in this case was overwhelming. We note as well that Ficker never testified that the defendant was acting nervous at the time of his arrest, only that he was driving erratically immediately before he was pulled over by police. Just before closing arguments began, the trial judge admonished the jurors that "[w]hat the lawyers say to you during arguments is not evidence

and can't—and should not be considered by you as evidence." Thus, we presume that any error in the State's closing argument was cured (see *Rush*, 294 Ill. App. 3d at 341), and that the jury was able to understand that the State's closing argument presented the inference the State wished the jury to draw—nervousness, and therefore consciousness of guilt, on the part of the defendant—but that this certainly was not the only inference that they could draw from Ficker's testimony. Indeed, a reasonable jury could have disregarded the inference suggested by the State and concluded that the defendant was simply a poor driver in general, or, like so many drivers, simply was not paying adequate attention to the roadway and the conditions around him as he drove on June 9, 2017. This is particularly true in light of the fact that Ficker never testified that the defendant was acting nervous when he was arrested, and that no other evidence to that effect was presented to the jury. For these reasons, and because it simply is not reasonable in the overall context of this case to conclude that the State's closing argument somehow resulted in "substantial prejudice" to the defendant (see *Kitchen*, 159 Ill. 2d at 38), we conclude that no reversible error occurred in this case.

¶ 21                             III. CONCLUSION

¶ 22    For the foregoing reasons, we affirm the defendant's convictions and sentences.


¶ 23    Affirmed.